# United States Court of Appeals
## For the First Circuit

No. 05-1383

UNITED STATES,

Appellee,

v.

WILLIAM FELIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lipez, Circuit Judge,
Cyr and Stahl, Senior Circuit Judges.

Lawrence A. Vogelman for appellant.
    Rachel E. Hershfang, Assistant U.S. Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

June 27, 2006

**STAHL, <u>Senior Circuit Judge</u>**.  William Feliz was convicted of conspiring to possess and distribute heroin and was sentenced to a prison term of 97 months' duration.  He now challenges the district court's decision not to reduce his sentence under the safety-valve provision of the Sentencing Reform Act, 18 U.S.C. § 3553(f) (2000), and contends that the district court misunderstood the Supreme Court's then-recent decision in <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005).  We affirm the sentence imposed by the district court in all challenged respects.

In November 2001, William Feliz was by all appearances a law-abiding family man who owned and ran a successful barbershop in New York.[1]  In December, for reasons unexplained, Feliz took up a rather surprising and ultimately disastrous new career as a middleman in a heroin trafficking enterprise.  His problems began when he arranged an introduction between two men, Jorge Ariel Abreu and Johnny Ciriaco.  Ciriaco was looking for a heroin supplier for his drug distribution enterprise in Massachusetts, and Feliz put the two in contact and hosted a meeting at his barbershop.  Feliz agreed to act as a sort of guarantor for Ciriaco, committing to Abreu that he would ensure that Abreu received payment for drugs sold to Ciriaco and Ciriaco's partner, Jose Miguel Hiciano Amaro.

---

[1]The district court accepted the presentation of facts related in the presentence report, and we relate the facts as stated in that report.

-2-

The day after the meeting, Abreu delivered 400 grams of heroin directly to Ciriaco, and Feliz shortly thereafter made payment to Abreu.  A second shipment, of an amount somewhere between 500 and 800 grams, was delivered directly to Feliz's barbershop, and Feliz stored the drugs there until they were picked up by Ciriaco.  A third delivery took place elsewhere in New York, when Abreu ultimately delivered 200 grams of heroin directly to Hiciano and Ciriaco (who had actually requested 500).  The evidence at trial was inconsistent as to whether Feliz had any involvement in this last transaction.  On multiple other occasions, Feliz acted as a financial intermediary, collecting funds from Hiciano, Ciriaco, and others and delivering them to Abreu.

Feliz was indicted on a single heroin distribution count on January 23, 2003.  He was later added as a defendant in a Second Superceding Indictment in a criminal case consolidating the charges against multiple members of the conspiracy, and the original solitary indictment was dropped.  Multiple superseding indictments followed.  In October 2004, Feliz was charged in a Fifth Superceding Indictment with one count of conspiring to possess and distribute heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1). He went to trial on November 1, 2004, and on November 8 a jury returned a guilty verdict.  The jury indicated on a special verdict form that Feliz was responsible for at least 700 grams but less

than one kilogram of heroin.  On February 2, 2005, the district court held a sentencing hearing.

Because Feliz had no prior convictions, the court determined that Feliz's Criminal History Category was I.  On the basis of the jury verdict, the court found that Feliz was responsible for between 700 grams and one kilogram of heroin, resulting in a base offense level of 30 under USSG § 2D1.1.  The only question raised at the hearing as to the applicability of any Guidelines provision was whether Feliz merited a two-level reduction under what is known as the safety-valve provision of the Sentencing Reform Act, 18 U.S.C. § 3553(f)(1)-(5), reiterated in the Guidelines at USSG § 5C1.2.  Without the reduction, the Guidelines-recommended sentencing range was 97 to 121 months' imprisonment, while with the reduction the range would have been 78 to 97 months.

The sentencing safety-valve provision offers a criminal defendant an incentive to fully disclose all information known to him by offering a modestly reduced sentence for such disclosure. Its first four factors describe the kind of defendant and kinds of crimes to which the safety-valve provision may apply,[2] and Feliz satisfied all four of these criteria.  As in many of our safety-

---

[2]Generally speaking, the provision is only available to defendants with little criminal history who did not have a leadership role in the offense, and it is only available where the crime committed did not involve violence or firearms or otherwise result in serious injury.

valve cases, the battleground was the fifth factor, which is the heart of the provision: the fifth factor requires that "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  18 U.S.C. § 3553(f)(5); USSG § 5C1.2.

The safety-valve provision is typically satisfied by a defendant who makes himself available to the government for a debriefing, United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996), and here Feliz did answer the government's questions in an initial session held in anticipation of his entering a guilty plea. Subsequent to the meeting, Feliz changed his mind and exercised his right to trial.  While the prosecutor initially was convinced that Feliz had made full disclosure at the debriefing session, she asserted to the district court that in preparing for trial and after hearing the testimony given at trial, she had reached the conclusion that Feliz had withheld certain information and mischaracterized his role in the offense in other ways.  The government noted, as an example of the inconsistencies, that Feliz had failed to mention the second of the three transactions discussed above.  Feliz contended to the contrary that he had given substantially all of his information to the government during the debriefing by faithfully answering all the questions asked of him.

-5-

The court agreed with the government's position and declined to apply the safety valve.

Feliz next urged the court to consider factors not taken into account in the Guidelines and impose a lower sentence than the Guidelines recommended, but the court, satisfied with the Guidelines recommendation, sentenced Feliz to a 97-month prison term. Feliz now appeals both the decision not to give him the benefit of the safety-valve provision and the sentence as a whole.

As to the safety valve application, there is little to Feliz's argument. Feliz urges, in essence, that the court made insupportably thin findings of fact as to whether he had made full disclosure. At the sentencing hearing, the court heard argument on whether the safety-valve criteria were met. The government recommended to the court that the safety valve not be applied. Immediately afterwards, the court imposed sentence, opting to follow the government's recommendation.

The only potentially troubling aspect of the case is that the court did not itself recite the particular respects in which the defendant's account at his initial proffer differed from the testimony of other witnesses at trial. To some extent, deficiencies in the court's fact-finding implicate a procedural concern, i.e., the requirement that a district court provide a clear explanation of its reasoning sufficient to allow meaningful appellate review, which is intermingled here with Feliz's strict

contention that the court's factual conclusion that he had not fully disclosed was erroneous.

Our review of a district court's decision whether or not to apply the safety value is ordinarily for clear error, United States v. Marquez, 280 F.3d 19, 22 (1st Cir. 2002), which means that "we ought not to upset findings of fact or conclusions drawn therefrom unless, on the whole of the record, we form a strong, unyielding belief that a mistake has been made." Id. at 26 (quoting Cumpiano v. Banco Santander, 902 F.2d 148, 152 (1st Cir. 1990)). But that standard is more appropriate in a case where the district court notes and explains particular omissions or misrepresentations in a defendant's proffer. See United States v. Matos, 328 F.3d 34, 40 (1st Cir. 2003) ("Our obligation to accord substantial deference to the sentencing court is best carried out -- particularly in close cases -- if that court shares its basis for concluding that the disclosure efforts fell short.").

Here, however, while the district court engaged in a colloquy with the parties on the applicability of the safety valve, it did not state its reasons for not applying it. Where the basis for the district court's determination is unclear, it is incumbent upon us to vacate, though not necessarily to reverse, if we have substantial doubts about the supportability of the district court's determination. See United States v. Olbres, 99 F.3d 28, 30 (1st Cir. 1996); United States v. Curran, 967 F.2d 5, 7 (1st Cir. 1992).

-7-

We can sometimes divine the necessary clarity, and thus salvage a poorly explained judgment, by "comparing what was argued by the parties or contained in the pre-sentence report with what the judge did" and inferring the court's reasoning. United States v. Jimenez Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc).

The government pointed to at least one specific and significant fact that Feliz failed to divulge to the government: there were three major drug transactions at issue in Feliz's case, and Feliz did not disclose his involvement in the second of these in his initial proffer. It also asserted that Feliz had attempted to play down his involvement in the charged conspiracy and had generally not been forthcoming. It was the defendant's burden "to persuade the district court that he ha[d] 'truthfully provided' the required information and evidence to the government," United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996) (quoting United States v. Flanagan, 80 F.3d 143, 145-47 (5th Cir. 1996)), and faced with a damning example of inconsistent testimony, Feliz's burden was the higher because he had to overcome affirmative arguments that he had not been truthful.

Had Feliz made a credible effort to rebut the government's assertions that he was involved in the second transaction and that he omitted to disclose other material information during his debriefing, we would have more difficulty discerning the district court's reasoning, but as things stand it

is clear that the district court credited the government's account -- and acted properly in doing so.  Feliz conceded that there were variances between his proffered information and the testimony presented at trial.  As to the particular omission of a full account of the second transaction, Feliz argued that the testimony, given by one of his co-conspirators, might have been false.  As to the other scattered omissions (acknowledged by Feliz although never described in detail by the government or the court), Feliz argued that he had truthfully responded to all questions put to him and that any resulting omissions should not be counted heavily against him.

The first point carries little weight: it was for the district judge to assess the credibility of the varying accounts, and while the court did not explicitly adopt the government's assertions as to specific examples of inconsistencies, all indications are that the court was swayed by the government's argument.[3]  As to the second point, a purpose of the safety-valve

---

[3]Feliz implicitly argued that he knew nothing of the second transaction.  The argument went that: 1) the government's theory was that Feliz was responsible for more than one kilogram of heroin; 2) the jury found that he was responsible for less than that amount; and 3) the jury's disagreement with the government was best explained by the jury discrediting Abreu's testimony that Feliz was involved in the second transaction.  The court, however, found that the second transaction did take place and did involve Feliz.  Feliz's points in challenge to the finding are not persuasive: the jury's verdict may be explained on multiple, perhaps more likely, grounds as well, and in any event the jury's determination that a fact was not proved beyond a reasonable doubt would not preclude the court finding the same fact proven by a

provision is to encourage defendants to come forward with information that the government might not already have. The emphasis on full disclosure means that the issue is not whether a defendant accurately answered questions put to him: the defendant has to volunteer information even if the government fails to ask for it. See Matos, 328 F.3d at 38. Of course a court must be fair and practical in determining the scope of a defendant's burden to disclose information about which he is not asked, for a defendant may in good faith omit to disclose information he could not imagine was relevant, and there will be cases where he ought not to suffer for such an omission. Here, however, Feliz's integral participation in a major drug transaction had to be disclosed. In light of the defendant's concessions that the information he gave was inconsistent with information given at trial and the court's evident acceptance of the government's account, and given the fact that the burden was on the defendant to demonstrate full disclosure, we do not think the district court erred in refusing to apply the safety-valve provision.[4]

---

preponderance of the evidence.

[4]On appeal, Feliz does not sufficiently rebut the government's specific allegations that he failed to fully disclose, either by registering equally specific denials of the accuracy of the government's assertion that such an inconsistency existed or by specifically explaining it. This further heightens our comfort with the district court's conclusion.

What is left is the contention that the court misunderstood Booker when it imposed sentence. Booker, of course, rendered the Guidelines advisory, giving the district courts a freer hand to fashion appropriate sentences. The court here, however, did not exercise its newfound freedom, concluding that the Guidelines-recommended sentence was appropriate. Feliz's argument comes down to this: "By stating that given the legislative framework the guidelines sentence was reasonable, the court was giving dispositive weight to the guidelines. The court's sentence, therefore, was in violation of the mandate of [Booker]." The argument turns on the fact that the court stated, in a closing admonition to Feliz, "I am sorry it's come to this, but the law, as [defense counsel] points out, when it comes to drugs is hard." The inference Feliz draws is that this statement reflects the court's erroneous belief that it had no choice but to punish Feliz according to the Guidelines.

The only claim, therefore, is a claim of legal error: that the court simply misunderstood the import of Booker. But the court elsewhere expressly indicated its understanding that Booker "clearly struck the two mandatory provisions of the Guidelines and, rather, counsels that the court use the Guidelines as a basis for departure in its analysis of what is or is not reasonable in any given sentencing context." We do not mean to endorse this statement as a precise formulation of the meaning of Booker -- our

-11-

developing case law on the topic does that job -- but the statement was enough to satisfy defense counsel at sentencing, who indicated immediately his agreement that he and the court were "on the same page."  Because defense counsel accepted this formulation of the law and raised no subsequent objection to the court's understanding or application of <u>Booker</u> in the case, our review is for plain error, and we find none.  The court's understanding of <u>Booker</u> was substantially correct and worked no injustice here sufficient to clear the hurdle of our plain error review.

The sentence imposed by the district court is **<u>affirmed</u>**.