# United States Court of Appeals
## For the First Circuit

Nos. 22-1171
     22-1172

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS ÁNGEL COLÓN-CORDERO, a/k/a Luis El Loco, a/k/a El Loco,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Rikelman, Lipez, and Thompson,
Circuit Judges.

Alejandra Bird-López, Research and Writing Attorney, with
whom Eric Alexander Vos, Federal Public Defender, and Franco L.
Pérez-Redondo, Assistant Federal Public Defender, Supervisor,
Appeals Section, were on brief, for appellant.
    Julia M. Meconiates, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

January 19, 2024

**THOMPSON, Circuit Judge.** When authorities picked up Luis Ángel Colón-Cordero (Colón) for violating some terms of his supervised release, they found evidence of other violations as well as evidence of new criminal conduct. And so, another in a long line of examples of folks slipping into a criminal-justice-system spin cycle, Colón found himself back in court for sentencing hearings regarding the new criminal case against him and revocation of his supervised release. The parties agreed to request within-guidelines sentences, but the district court, not bound by the parties' recommendations, imposed an upwardly variant sentence of imprisonment for the new criminal conduct and a tip-top-of-the-guidelines-range term of imprisonment for violating his supervised release, with those sentences to run consecutively. On appeal, Colón raises a number of arguments challenging the pronounced sentences as unreasonable. For reasons we'll explain, we vacate and remand for resentencing.

## BACKGROUND

We begin with the relevant facts and travel, providing the bulk of the particulars now (bear with us) with plans to add some more detail later as needed. As usual when a sentencing appeal follows a plea of guilty, we draw the facts from the uncontested parts of the probation office's presentence investigation report (PSR), the plea agreement, and the transcript

of the sentencing hearing.  See United States v. Morales-Cortijo, 65 F.4th 30, 32 (1st Cir. 2023).

### Colón's History, Supervised Release Term, Violations, and New Criminal Case

Back in 2017, Colón pleaded guilty to conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846, and he was sentenced to 45 months and 19 days of imprisonment and 8 years of supervised release. Colón discharged that term of immurement and was released in 2019, and from there he began his term of supervised release.

Now, it is undisputed that Colón is a person with an intellectual disability, and, as the record makes pellucid, he has a history of mental health issues. Some examples:  a school referral prompted him to see a mental health specialist when he was 15; he heated a car antenna, then used it to burn his forehead and under his eyes; he has used cigarettes to burn his forearms and blades to cut himself; and he has visible scars from his self-inflicted burning and cutting. And, as of his 2017 plea, a then-25-year-old Colón had a history of substance abuse, including smoking marijuana (25 joints a day) since he was 18, and, at the same age, developing a use of non-prescription Xanax, Percocet, and Klonopin (one or two pills daily), plus occasionally mixing some of this drug use with alcohol.

And so, as part of his August 2019 supervised release, Colón was referred to substance abuse and mental health treatment. The mental health treatment to which Colón was later referred in January 2020 screeched to a halt with the advent of the global COVID-19 pandemic and its resulting lockdowns, but Colón continued his substance abuse treatment, which he reported he liked going to and found helpful. For 14 months during his supervised release term (up until he was arrested, anyway), Colón tested positive to cannabinoids two times out of seventeen tests (more on this later) and failed to report to the drug-testing program once.

Aside from those two positive drug tests, which were violations in and of themselves pursuant to the terms of his release, Colón violated another supervised release condition when he failed to stay at his address of record (his mother's house). After being called out for moving out, Colón returned to his mom's place, but he didn't stay put long: Two days later, probation reported, he'd again moved out without notice. In response, probation successfully requested an arrest warrant, and local authorities searched the place where Colón was thought to be residing. During the search, officers found under Colón's bed a loaded AR-style rifle with 30 rounds of ammunition along with an extra magazine loaded with an additional 30 rounds of ammunition. Colón admitted ownership of the rifle, nonchalantly observing to

- 4 -

the officers "that he liked rifles."  The search team also found presumptive synthetic marijuana[1] and rolling paper in his car.

A federal grand jury indicted Colón on a single count of violating 18 U.S.C. § 922, which generally proscribes certain categories of people from possessing firearms or ammunition.  Colón waived his preliminary revocation hearing for the supervised release violations and on the new charge pleaded guilty to being a felon in possession of ammunition (60 rounds) pursuant to a plea agreement.[2]

The parties proposed in the plea agreement an advisory guidelines calculation that started with a base offense level of 22, minus three levels for acceptance of responsibility, and determined a total offense level (TOL) of 19.  And the parties also agreed they'd each request a sentence within the to-be-tallied guidelines range for the TOL of 19 when combined with the undetermined Criminal History Category (CHC).  The PSR landed on 19 as the TOL, too, then laid out Colón's criminal history, including his Commonwealth-side drug conviction (possessing controlled substances and drug paraphernalia) and the federal drug conviction (conspiracy to possess with intent to distribute

---

[1] The record does not reflect that this substance was ever tested and confirmed to be synthetic marijuana.

[2] The parties agree the agreement's waiver-of-appeal provision does not operate as a bar to this appeal since the provision was conditioned on the district court sentencing Colón to a term of 46 months' imprisonment or less -- which condition is not met here.

narcotics). These tabulations dictated a CHC of IV, and, together with the TOL of 19, yielded a guidelines sentencing range of 46 to 57 months' imprisonment.

Each side then filed a sentencing memorandum in support of its recommended sentence (a low-end 46 months from Colón; a high-end 57 months from the government) in anticipation of the upcoming hearings.

### The Sentencing Hearings

Before the district court in February 2022, the first sentencing matter taken up was Colón's new criminal case (the ammunition-possession indictment). Counsel for Colón started with some objections to the PSR, two of which are relevant to today's analysis. First, counsel argued the district court should append to the PSR a psychometric evaluation filed by the expert who'd examined Colón at defense counsel's request and assessed his intellectual disability; the district court agreed to do so. That matter squared away, counsel next argued that because the PSR's drug-use section described Colón's historically heavier use of substances, the PSR impermissibly suggested that, during his release period, Colón had been using more than just the marijuana to which he'd twice tested positive. The court signaled in response that it would consider these points in sentencing.

Moving to her argument proper, Colón's counsel offered the following in support of the recommended low-end 46-month sentence.

Stating what those in the sentencing world should take as a given, counsel set the stage by pointing out that the sentencing court must "make[] an individualized assessment . . . of Colón" when pronouncing sentence. To that end, counsel urged Colón's offense was not a violent one -- it was possession only, and his offense could be explained by Colón's intellectual disability, which was a big part of why, counsel explained, "the cards have always been stacked against" Colón. That disability rendered Colón -- who has an IQ equivalent to a third-grade education, is especially susceptible to peer pressure, and cannot read or write -- unable to appreciate the amount of ammunition loaded into the magazines, and his disability also prompted his comment that he likes guns. Drawing on all of this and more, counsel beseeched the court to balance this information against the need to deter and promote respect for the law when crafting an individualized sentence of imprisonment for his non-violent crime.

The government, on the other hand, sought a 57-month term of imprisonment plus a term of supervised release. In support, the government submitted that Colón "needs to take individual responsibility for his actions," part of which would be an acknowledgment that the rifle he possessed while on release

wasn't just any gun, it was a "ghost gun" (so called because guns of that variety have no identifying information, such as a serial number) loaded with 30 rounds of ammunition, suggesting he "was ready to use the rifle if he needed it." The government also pointed to Colón's conduct as "part of a broader [drug-use] problem" -- the government cited his use of "approximately 25 marijuana cigarettes per day" as well as "daily" use of Xanax, Percocet, and Klonopin, not to mention his admission to probation that he sometimes mixed prescription drugs and marijuana with alcohol use. And, in the government's telling, Colón didn't have a history of seeking mental health treatment, instead opting to "channel[]" his anxiety and anger into "destructive" activities.

Citing its review of the 18 U.S.C. § 3553(a) factors, PSR, sentencing memoranda, and a document the court construed as Colón's allocution, the court turned to its own take on sentencing. The court listed then-30-year-old Colón's "history of using marijuana and Percocet and Xanax pills without prescriptions," and that he "has never received treatment" for his complained-of anxiety. The court noted the fact that Colón was found in possession of a ghost AR loaded with a high-capacity magazine with 30 rounds of ammo, plus another magazine with the same ammo loaded into it (though, the court noted, Colón was charged and pled guilty only to possession of 60 rounds of ammo). "[H]e liked rifles," the court observed. Concluding the parties' recommended sentences

- 8 -

did not reflect the seriousness of this offense, address the need for deterrence and punishment, acknowledge the import of protecting the public, or promote respect for the law, the district court pronounced an upwardly variant 66-month term of imprisonment, plus a 3-year term of supervised release.

Colón's counsel objected to the above-guidelines sentence as unreasonable "given the fact history of [Colón]" and the consideration of his historical drug use as part of the § 3553(a) factors assessment (given "there was a difference of his drug use," past versus more recent).

Immediately on the heels of that part of the hearing (same lawyers, same judge, same transcript -- no break in the action) came the final revocation hearing, where Colón's counsel noted that his Grade B violation advisory guidelines range was 4 to 10 months, then requested a lower end sentence of 4 months' imprisonment to run concurrently with the just-imposed criminal-case sentence. For its part, the government requested a high-end 10-month sentence.

The court revoked the 2017 supervised release term and, citing its review of the guidelines' policy statements on supervised release, the § 3553(a) factors, and "the seriousness of [the] violation," and noting Colón "demonstrated a lack of commitment and respect to the supervision process, as well as a disregard to the law, by constantly engaging in the illegal use of

controlled substances," the court imposed a 10-month sentence to run consecutive to the new-criminal-case sentence, followed by a 5-year term of supervised release.

Colón's counsel requested reconsideration of "the length of the sentence" and urged that it should run concurrently with the new-criminal-case sentence. Counsel said the aggregate 76-month sentence was quite substantial -- particularly with this being Colón's first revocation. "Denied," was the court's response.

This timely consolidated appeal followed.

## DISCUSSION

Colón's appeal levels a multifaceted challenge at the procedural and substantive reasonableness of the sentences imposed by the district court. Before we dive into any of the arguments he makes in support of that challenge -- or any of the government's responses thereto -- we first lay out some preliminary method-of-review guideposts and the reviewing lens we'll be using to examine Colón's asseverations.

It is axiomatic that our "review of a criminal defendant's claims of sentencing error involves a two-step pavane." United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). This two-step framework is well established. Under it, "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively

reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). At both steps, preserved claims of error get abuse-of-discretion review, see United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020), and, as part of that review, we look at findings of fact for clear error and scrutinize questions of law de novo, see United States v. Carrasquillo-Vilches, 33 F.4th 36, 41 (1st Cir. 2022).

Today, we start (and will end, as it turns out) with Colón's procedural-reasonableness claims. And we need train our focus on only some of those claims, not all, to reach our outcome. See, e.g., United States v. Torres-Meléndez, 28 F.4th 339, 340 (1st Cir. 2022) (taking the same approach and nodding to the adage that "the 'simplest' way to handle a case is often the 'best' way" (quoting United States v. Cruz-Ramos, 987 F.3d 27, 39 (1st Cir. 2021))).

Specifically, we'll take on Colón's contentions that the sentencing court committed error: (1) in pronouncing sentence in the new criminal conduct case when it failed to justify and adequately explain its upwardly variant sentence, which dovetails with what Colón says was the court's failure to engage with the mitigating individual characteristic of Colón's intellectual disability, which was the primary sentencing argument the defense advanced; and (2) in erroneously finding during the revocation

sentencing that Colón was "constantly engaging in the illegal use of controlled substances" "through his supervision period."

We take these arguments, and the government's protestations to them, in turn, applying the just-recapped abuse-of-discretion framework -- despite the government's argument that we should don a different reviewing lens. We'll explain briefly why we reject the government's request.

Pointing, for instance, to what it characterizes as Colón's counsel's failure to object below with specificity to things like the sentencing court's balancing of the sentencing factors or the adequacy of the sentencing rationale, the government posits that not all of Colón's appellate contentions were preserved for our abuse-of-discretion review. The government submits that we should instead deem some arguments waived for failure to map them onto the resulting (and demanding) plain-error rubric or, at best, review those arguments for plain error.

"For a defendant '[t]o preserve a claim of procedural sentencing error for appellate review, [their] objection need not be framed with exquisite precision.'" United States v. Reyes-Correa, 81 F.4th 1, 10 (1st Cir. 2023) (alterations in original) (quoting United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020)). "It must, however, 'be sufficiently specific to call the district court's attention to the asserted error.'" Id.

(quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017)).

Having carefully studied the sentencing transcript in its totality, we conclude it is contextually clear defense counsel's objections sufficiently called the district court's attention to the perceived sentencing problems that now form the basis of the appellate arguments we're about to tackle. Counsel urged that the new-criminal-case sentence was unreasonable given Colón's "fact history" -- looking at things holistically, that objection clearly is a callback to the comprehensive arguments and urgings Colón's counsel had infused into the hearing, thus sufficiently encompassing and preserving the argument that the district court ignored the mitigating history and characteristics and didn't adequately explain its "above-guidelines sentence." And after the revocation sentencing, during which the district court referred to Colón's "constant[]" use of drugs "through his supervision period" in pronouncing sentence, counsel's reaction was to protest the length of that sentence, it running consecutive to rather than concurrent with the other sentence, the substantiality of the aggregate sentence, and the fact that Colón hadn't gotten all the help he really needed during the short time he'd been on release. And, of course, we also know that, at the very outset of the hearing, counsel had objected to the PSR's characterization of Colón's drug use historically versus while on

- 13 -

supervised release; counsel argued these same clarifications several times throughout the hearing.[3]

This is not a situation where we are faced only with a record that reflects a general objection to a sentence. Cf. United States v. Ahrendt, 560 F.3d 69, 76 (1st Cir. 2009) (deeming an argument on appeal unpreserved because an appellant "never objected to the particular issues" he raised on appeal -- his "generic objections [could not] be fairly interpreted as giving notice to the court" as to those specific issues). Instead, the thematic protestations and objections here rather bleed together and certainly operated to make the district court aware of the defense's claimed errors. See, e.g., Reyes-Correa, 81 F.4th at 10 (finding "[s]ubsumed within" a party's objections "the clearly implicit charge that the district court's explanation rested on improper considerations" (quoting United States v. Serrano-Berríos, 38 F.4th 246, 250 n.1 (1st Cir. 2022))). Requiring more of defense counsel here would be unwarranted. What actually got

---

[3] We also note that when Colón's counsel objected to the district court's reliance on the PSR's characterization of Colón's history of drug use when announcing the 66-month sentence, the court remarked, "I don't think it's a good idea for you to say that I should not indicate what his past drug use has been," and indicated it might rescind its recommendation that Colón participate in a beneficial drug treatment program if his counsel pursued that argument further. Given the court's response, Colón's counsel cannot be faulted for deciding not to trot out the same just-rejected objection only minutes later at the conclusion of the revocation sentencing.

- 14 -

said is well in line with our preservation policy (basically, putting the district court on notice of the error).  See Holguín-Hernández v. United States, 140 S. Ct. 762, 766 (2020) ("The question is simply whether the claimed error was 'brought to the court's attention.'" (quoting Fed. R. Crim. P. 52(b))); Fed. R. Crim. P. 51(b).

Thus, on this record, abuse-of-discretion review it is. Now, we turn to the appellate contentions and the precedential landscape against which they appear in this case.  First, the new-conduct sentence; then, the revocation sentence.

### New Criminal Conduct Sentence: The Sentencing Explanation and Mitigating Factors

As we mentioned earlier, we need tackle only some of Colón's various appellate attacks.  Namely, we review Colón's correlated attacks on the adequacy of the court's explanation for its upward variance in the new criminal conduct case and its failure to address the mitigating evidence of Colón's intellectual disability.[4]  But we'll lay out the particulars of these arguments

---

[4] We note right off the bat that, "[g]enerally speaking, it is not abundantly clear whether failure to consider mitigating factors goes to the procedural or substantive reasonableness of a sentence."  United States v. Santiago-Lozada, 75 F.4th 285, 295 n.11 (1st Cir. 2023).  And "[t]he lack of an adequate explanation can be characterized as either a procedural error or a challenge to the substantive reasonableness of the sentence."  United States v. Crespo-Rios, 787 F.3d 34, 37 n.3 (1st Cir. 2015).  Colón focuses these arguments on procedural error, and we follow suit.

- 15 -

after we provide a sampling of the wide world of pertinent sentencing considerations that animates our coming analysis.

*The Primer*

When it comes to what a court must do when pronouncing sentence, our jurisprudence has seen quite the evolution. See United States v. Flores-González, 86 F.4th 399, 417-25 (1st Cir. 2023) (Thompson, J., joined by Barron, C.J. and Montecalvo J., for a divided en banc court) (tracking and studying in detail the history and progression of federal sentencing precedent and parameters). Specific to the adequacy of a court's explanation grounding a variance from the guidelines range, here are the basics.

Federal law requires a sentencer to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c); see also Gall v. United States, 552 U.S. 38, 46, 50-52 (2007). Just what kind of explanation is needed depends on the context of each individual case, Rita v. United States, 551 U.S. 338, 356 (2007) ("The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances."), but sentencing courts must say enough to show an appellate court they "considered the parties' arguments and ha[d] a reasoned basis for exercising [their] own legal decisionmaking authority," id. When a court imposes a sentence above the guidelines sentencing range, "it must justify the upward

variance." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014); see also Rita, 551 U.S. at 357 (directing that when sentences fall outside the guidelines, sentencing judges must "explain why" they decided not to follow the commission's recommendations). "[T]he greater a deviation from the [guidelines sentencing range], the more compelling the sentencing court's justification must be." Del Valle-Rodríguez, 761 F.3d at 177.

Of overarching importance in sentencing is that a sentencing court must always conduct an "individualized assessment" of the § 3553(a) factors -- which include mitigating characteristics of the offender -- based on the facts presented in a particular sentencing case. Gall, 552 U.S. at 50 (reasoning that any justification for a variance must be "sufficiently compelling to support the degree of the variance," and in all sentencing matters a judge is required to provide "adequate[]" explanations "to allow for meaningful appellate review and to promote the perception of fair sentencing"); see also United States v. Booker, 543 U.S. 220, 261 (2005) (explaining that discussion of "[t]hose factors in turn will guide appellate courts . . . in determining whether a sentence is unreasonable"). How to weigh the § 3553(a) factors falls inside a sentencing court's "informed

discretion." United States v. García-Pérez, 9 F.4th 48, 52 (1st Cir. 2021).

We do not require sentencing courts to deliver a "rote incantation" of each factor, and we do not expect them to apply equal weighting across factors. See United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). We likewise do not require a sentencing court to "address every argument that a defendant advances in support of his preferred sentence." United States v. Rivera-Morales, 961 F.3d 1, 19 (1st Cir. 2020). When a sentencing court explicitly notes that it considered all the § 3553(a) factors, we will take that into consideration. Clogston, 662 F.3d at 592 (observing that when a district court says it considered the § 3553(a) factors, "[s]uch a statement 'is entitled to some weight'" (quoting United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010))). And, when it isn't readily apparent in as many words, we sometimes are able to infer that a sentencing court weighed relevant factors in explaining its pronouncement. United States v. Flores-Nater, 62 F.4th 652, 656 (1st Cir. 2023) ("[W]e have not mandated that a sentencing court follow any particular format in explaining an upwardly variant sentence. It is enough if the explanation can be gleaned 'by fair inference' from the sentencing record." (citation and internal quotation marks omitted)); see also United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016). We resist arguments that are nothing more

than attempts to "substitute [a defendant's] judgment for that of the sentencing court." United States v. Cahill, 85 F.4th 616, 625 (1st Cir. 2023) (quoting Clogston, 662 F.3d at 593); United States v. Ruperto-Rivera, 16 F.4th 1, 6 (1st Cir. 2021).

With this legal backdrop in place, we move on.

*The Arguments*

As we've previewed, Colón's attack on the reasonableness of the court's pronounced sentence for his new conduct goes like this: The court erred by failing to consider or address the mitigating impact of his intellectual disability and, quite relatedly, the court did not provide an adequate explanation for the upward variance. Colón all along has presented one principal mitigating characteristic argument -- his intellectual disability mitigates his culpability for his new criminal conduct (and the supervised release violations) in that, for example, it made him susceptible to being pulled into the criminal activities and conspiracies in which he was embroiled. He points out that, despite consistently arguing this mitigating characteristic throughout the sentencing proceedings, the court did not address it at all in its sentencing decision. While recognizing, as we have outlined above, that a sentencing court is not required to address every factor or every argument in making its sentencing decision, Colón argues that in his case, the court here cannot have adequately explained its upwardly varying sentence when it

- 19 -

failed to even mention his disability or the well documented impact it has had on his life (remember the self-mutilation).

The government relies generally on the fact that the sentencing court enjoys wide discretion in its consideration of the sentencing factors and chalks Colón's argument up to being a complaint about <u>how</u> mitigating factors were weighed, pointing out too that the court didn't need to address every argument Colón made. It submits that, because the district court was obviously very aware of Colón's disability (the government points, for instance, to the district court telling the parties it had read and considered Colón's sentencing memorandum, where his disability was highlighted in detail), its decision simply reflects that it considered and rejected the defense argument that the mitigating factor of Colón's disability warranted a lower sentence. The government contends the district court's explanation was sufficient because it focused on the offense conduct and relevant aggravating factors not included in the guidelines calculation to support the upward variance (like the loaded rifle -- a ghost gun, remember).

*Our Take*

Colón's challenge has merit. As we'll lay out, on this record, the district court's explanation was problematically thin, and its failure to consider expressly Colón's intellectual disability as a mitigating characteristic -- not just one of many

mitigating arguments below, but the principally highlighted argument below -- ultimately compels our conclusion that its explanation of the upwardly variant sentence was thus inadequate.

As a refresher, the court's sentencing colloquy went like this. First, the court recited some basic facts about Colón and his case (his age, offenses, history of drug use, the gun -- more on this in just a moment). Then, it observed that Colón "requested a sentence of 46 months" while the government sought "a sentence of 57 months." But it reasoned "that neither sentence reflects the seriousness of the offense, promotes respect for the law, protects the public from additional crimes by Mr. Colon, nor does it address -- do they address the issues of deterrence and punishment." And then it levied its upwardly variant sentence.

On its face, this boilerplate language is insufficiently individualized and it is inadequate -- on its own -- to explain the upwardly variant sentence. See, e.g., Reyes-Correa, 81 F.4th at 10-11 (collecting some recent examples of similarly inadequate boilerplate "explanations"). "[I]t simply rehearses -- but," emphasis ours, it "does not apply -- certain of the factors that Congress has instructed courts to consider in imposing sentences." Id. at 11 (quoting Flores-Nater, 62 F.4th at 656, which in turn is citing 18 U.S.C. § 3553(a)(2)).

But what else was said? This matters because, as already mentioned, we readily acknowledge that sometimes a sentence can be

- 21 -

deemed adequately explained by drawing "fair inference[s] from the sentencing record." Id. (quoting Montero-Montero, 817 F.3d at 38). However, "while 'a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did,' such inferences must be anchored in 'what the judge did.'" United States v. Carrasquillo-Sánchez, 9 F.4th 56, 62 (1st Cir. 2021) (quoting United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006)); see also García-Pérez, 9 F.4th at 55.

Having acknowledged that it considered the § 3553(a) factors, PSR, and sentencing memoranda, and after laying out the facts of Colón's offenses, the court also mentioned: Colón's age, 10th grade education, and employment info; his history of using marijuana as well as non-prescription Percocet and Xanax; his history of anxiety but never getting treatment for it; that he was found with ammunition and a loaded "ghost AR 15-style assault rifle with no serial number"; and that he told probation that "he liked rifles."

In addition to the idea that perhaps this list of considerations could help explain the sentencing rationale, there is also an argument to be made -- and the government makes it -- that the mention of the loaded ghost gun ("difficult, if not impossible," the court noted, for law enforcement to trace) explains the court's variant sentence. As the government tells

it, the sentencing court identified these main factors as justification for the variance, with its rationale hinging on being very troubled by the loaded ghost gun and extended magazine, not to mention Colón's comment that he likes guns. In the government's view, all of this is plenty from which we could infer an adequate sentencing rationale, particularly when the extent of the variance is so slight at "only 9 months" of extra imprisonment.

Color us unpersuaded. For one thing, as a general matter, we disagree with the characterization of this upward variance as insignificant. See Rosales-Mireles v. United States, 138 S. Ct. 1897, 1907 (2018) (Sotomayor, J.) (reasoning, in another sentencing context, that "'[t]o a prisoner,' th[e] prospect of additional 'time behind bars is not some theoretical or mathematical concept[,]'" and "'any amount of actual jail time' is significant" (first quoting Barber v. Thomas, 560 U.S. 474, 504 (2010) (Kennedy, J., dissenting); then quoting Glover v. United States, 531 U.S. 198, 203 (2001))). And as a practical matter, 9 months, which represents, for example, the length of an entire school year or a full-term pregnancy, would readily be understood as a significant time period by any reasonable measure.

Moreover, the court's statements do not constitute an application of the factors or an adequate explanation -- this is another "mere listing of the facts" that has no "emphasis on any particular circumstance," and thus it is "impossible to tell" what

the court's rationale was for landing on this 9-month upward variance -- 15% up from the guidelines sentencing range. Cf. United States v. Muñoz-Fontanez, 61 F.4th 212, 214 (1st Cir. 2023) (vacating a 20% upward variance there). What we have here, once again, is the court rehashing some basic identifying information and the facts that formed the basis of the new-conduct charge that led to the instant need for sentencing. See Reyes-Correa, 81 F.4th at 11; id. at 11-12 ("A summary of the events that preceded the [sentencing] hearing -- without more -- is an impermissible basis for a large upward variance.").

We need to be able to understand the reasons of the district court and how it arrived at its sentencing pronouncement: "When imposing a significant variance, a sentencing court must make clear which specific facts of the case motivated its decision and why those facts led to its decision." Muñoz-Fontanez, 61 F.4th at 215; see also Reyes-Correa, 81 F.4th at 13 ("If the court deemed the number of revocations, Reyes's behavior, or some other aspect of the record uniquely unacceptable, it should have so stated."). We grant that we certainly can conceive of different ways a ghost gun being in the factual mix (when the gun possession isn't already encompassed by the guidelines) could affect sentencing. We can even (speculatively) conceive of specific ways the ghost gun in this case might've impacted the sentencing court's analysis. But our point here is that we do not know which reasons -- if any --

were <u>actually</u> what the sentencing court had in mind when pronouncing sentence. The point, indeed, is that the court didn't say. See <u>Gall</u>, 552 U.S. at 50 (instructing that sentencing courts must offer "adequate[]" explanations "to allow for meaningful appellate review and to promote the perception of fair sentencing").

Now, it is not sufficiently clear to us that the court's mention of the ghost gun connects the necessary inferential dots to reveal a strong justification for the variance. But even if enough "fair inferences" could carry the day here to divine a ghost-gun-anchored justification that would pass muster,[5] see <u>Flores-Nater</u>, 62 F.4th at 656 (noting that it is sometimes possible for us to draw inferences from the sentencing record in concluding that a district court adequately explained a variance), another problem with the court's sentencing explanation looms:  its failure to mention, let alone engage with, Colón's intellectual disability as a mitigating characteristic. The conspicuous absence of any mention of that characteristic smacks of a failure to make an individualized assessment of Colón. We explain.

_____

[5] Given where we land analytically today, we need not and do not make any per-se judgment as to the impact possession of a ghost gun ought to have on a sentencing calculus. As always when it comes to fashioning a sentence, the role of any given fact -- ghost gun or otherwise -- in any given sentencing record should be carefully assessed individual case by individual case.

Some distinctions are helpful as a starting point. Colón's case is not one in which the district court quite clearly addressed certain things, but an appellant nonetheless complains it did not, see, e.g., García-Pérez, 9 F.4th at 52 (rejecting a defendant's argument that the court failed to consider mitigating factors of his youth and prior clean record when the court had expressly mentioned both),[6] and (despite the government's suggestion to the contrary) it is similarly unlike the related class of cases where a defendant attempts to superimpose his own preferred weighing of the sentencing factors, see, e.g., Ruperto-Rivera, 16 F.4th at 6 (rejecting a mitigating-factors challenge when the appellant's "plaint boil[ed] down to a lament that the court did not weigh the aggravating and mitigating factors as counsel would have preferred"). Colón's case is likewise unlike those where a defendant trains his gaze on a sentencing court's failure to address one of his arguments -- when our caselaw is clear that, in fact, it need not "address every argument that a defendant advances in support of his preferred sentence." Rivera-Morales, 961 F.3d at 19 (emphasis added).

---

[6] Additional examples for the curious reader: Cahill, 85 F.4th at 625 (rebuffing a defendant's claim of error as to the district court's dismissal of multiple mitigating factors he'd argued when the court "expressly consider[ed] those factors"); and Ruperto-Rivera, 16 F.4th at 6 (finding a court "dealt explicitly with" a rehabilitation mitigation argument and therefore rejecting a defendant's accusation that the court had disregarded that mitigating factor).

Colón's case stands apart from these types of appeals for the simple reason that he isn't complaining about how a bunch of important mitigating factors were discarded or weighed wrong; he isn't arguing that some of his arguments were given short shrift or misunderstood. His position is that the mitigating individual characteristic and the argument about it were completely ignored. And on this record, he has a point.

True, the district court here stated that it considered the § 3553(a) factors. And while we give "some weight" to that statement, Dávila-González, 595 F.3d at 49 (citing United States v. Morales-Machuca, 546 F.3d 13, 26 (1st Cir. 2008)), we still must decide whether the court applied the factors reasonably.

We conclude the court fell short in this regard. This is because it is nose-to-face plain from the record that the district court never engaged with Colón's intellectual disability as a mitigating characteristic. Colón's steadfast theory throughout the sentencing proceedings was that his intellectual disability affects sentencing at many levels, including culpability, deterrence, and recidivism -- counsel all but jumped up and down to call attention to all of this. Yes, we are mindful that the court didn't need to address every argument raised, nor did it need to weigh the § 3553(a) factors in any particular way. But "[t]he relative weight of each factor will vary with the idiosyncratic circumstances of each case," Dixon, 449 F.3d at 205,

and on this record, given Colón's paramount emphasis on this individual characteristic as the mitigation argument, it is reasonable to conclude that the sentencing court should have engaged with it, see, e.g., Rita, 551 U.S. at 357 (teaching that when a party "presents nonfrivolous reasons for imposing a different sentence," sentencing courts should "explain why [the court is] reject[ing] those arguments" -- "[s]ometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation," but "[w]here the [sentencing court] imposes a sentence outside the Guidelines, the [court] will explain why [it] has done so" (emphasis added)). See also United States v. Robles-Alvarez, 874 F.3d 46, 53 (1st Cir. 2017) (deeming a sentence unreasonable when, "despite the appellant's repeated attempts" to get the sentencing court to consider a "potentially forceful [sentencing] argument," the court "fail[ed] to even mention the [sentencing] issue" and "did not even provide a cursory explanation for its rejection of his argument").[7]

---

[7] In a footnote, the government tells us Robles-Alvarez is neither here nor there because the facts there were unique since the appellant was sentenced to life in prison while his coconspirators received significantly lesser sentences, 874 F.3d at 52, and "Colón's case does not fit within [this] unique framework." All sentencing cases' facts are unique -- that is precisely the point of our sentencing jurisprudence that requires individualized assessment of each and every defendant to be sentenced. That said, and as Colón points out, we see quite a few pertinent similarities between Robles-Alvarez and the instant

As for possible inferences here, we run headlong into the issue we canvassed above -- the court did not say enough from which we could fairly infer how it felt about Colón's dominant mitigation argument. The government argues the district court "acknowledged" the argument by noting that it had reviewed the PSR, sentencing memos, and expert report that raised the mitigating characteristic. But on this record, it is simply a bridge too far for us to say the district court meaningfully considered, let alone adequately explained, how Colón's specific individual circumstances impacted the final sentencing decision. Rita, 551 U.S. at 356 (instructing that sentencing courts must say enough to show an appellate court they "considered the parties' arguments"). Same goes for how the ghost gun fits into any of this, i.e., whether the court's recitation of information about the ghost gun could suggest the court determined that fact and its attendant circumstances outweighed the mitigating characteristic of Colón's disability -- the court did not say, and there is insufficient record material to permit such an inferential leap.

matter (both defense sentencing memos focused on a mitigating factor to argue for a lower sentence, that argument was a primary focus at the sentencing hearing, and the sentencing court said nothing about the argument when pronouncing sentence). Id. The fact that the substance of the ignored "potentially forceful" argument might differ from case to case does not alter our reasoning today.

Here's where all of this leaves us:  The district court abused its discretion as it relates to the sentencing imperatives of individualized review of the § 3553(a) factors and the adequacy of the explanation for its upwardly variant sentence.

**Revocation Sentence:  "[C]onstantly engaging" in drug use "through his supervision period"**

Our remaining task is to examine Colón's contention that the district court erroneously found during the revocation sentencing that, "through his supervision period," Colón was "constantly engaging in the illegal use of controlled substances." According to Colón, this finding is clearly erroneous -- recall from many pages ago that the record reflects that Colón tested negative for cannabinoids fifteen times during his release, otherwise testing positive only twice (in December 2019 and June 2020, and for cannabinoids only) in the 14-month testing window. Colón notes that the PSR certainly (and misleadingly, he says) delved into his historical and more consistent abuse of harder drugs, but that prior use in no way reflected Colón's behavior during his supervised release period.  Colón also points out that at the sentencing hearing the government may have further muddied the waters by using the present tense to describe his prior drug use -- stating that he "smokes approximately 25 marijuana cigarettes per day . . . as well as taking Xanax, Percocet, and

Klonopins on a daily basis" and that he "mixes the prescription drugs and . . . marijuana with . . . alcohol."

The government's rebuttal is that the record supports a conclusion that the district court was well aware Colón had only two positive tests, but also knew Colón missed a drug test and purported synthetic marijuana and rolling paper were found in his car when he was arrested. The court had before it the PSR and defense counsel's many arguments about it. So, the government says, the district court fully appreciated the evidence of Colón's drug use during his supervised release, and its statement about "constant[]" use "is best characterized as an inartful slip of the tongue."

"[S]electing a sentence based on clearly erroneous facts" is an example of a "significant procedural error," United States v. Navarro-Santisteban, 83 F.4th 44, 55 (1st Cir. 2023) (alteration in original) (quoting Gall, 552 U.S. at 51), and such an error "warrant[s] 'revers[al] unless the government shows the mistake did not affect the sentence,'" id. (second alteration in original) (quoting United States v. Colón-Maldonado, 953 F.3d 1, 4 (1st Cir. 2020)). But "[c]lear-error review is demanding: this standard will be satisfied only if, upon whole-record-review, an inquiring court forms a strong, unyielding belief that a mistake has been made." United States v. Rivera-Nazario, 68 F.4th 653, 658 (1st Cir. 2023) (quoting United States v. Nuñez, 852 F.3d 141,

144 (1st Cir. 2017)).  "As long as the district court's decision is based on reasonable inferences drawn from adequately supported facts, we will not find clear error."  Id.

Here, it is very clear a mistake has been made:  This record does not reliably support a finding that Colón was "constantly engaging in the illegal use of controlled substances" "through his supervision period."  As Colón quite aptly crystallizes it, the district court "either misunderstood that the information in the PSR did not apply to Mr. Colón's current conduct, or it otherwise mistakenly believed the record supported a finding of 'constant' 'use'" -- "[e]ither way, the court irreversibly erred."  As we'll unpack, he is correct.

To the extent the district court misunderstood that Colón was using drugs during his supervised release period the same way he had many years earlier, that was, simply put and on this record, clear error.  The record evidence shows the only time Colón "constantly"[8] used drugs was years earlier (back when he smoked 25 joints a day and took Xanax, Percocet, and Klonopin

---

[8] "Constantly" is defined as "without variation, deviation, or change" and "with regular occurrence." Constantly, Merriam-Webster Online Dictionary (Jan. 5, 2024) http://www.merriam-webster.com/dictionary/constantly [https://perma.cc/T6XX-METW]; see also Constantly, Oxford English Dictionary Online (Jan. 5, 2024) https://www.oed.com/dictionary/constantly_adv?tab=meaning_and_us e&tl=true#8389233 [https://perma.cc/E7NX-T3LM] (defining "constantly" as "[i]nvariably, uniformly, regularly, in every case, always"; "[c]ontinually, perpetually, incessantly, always").

daily, sometimes even mixing prescription drugs with alcohol).

The government does not dispute this; it just insists the district court was well aware that Colón's past use was just that -- past -- because the court indicated that it had read Colón's objections to the PSR and Colón's counsel labored to clarify the PSR's freewheeling narrative of Colón's drug use. This would be a reasonable reading of things but for what the court actually said when imposing the revocation sentence. The court quite clearly stated (emphases are ours) that Colón's drug use "through his supervision period" was "constant[]." We cannot reconcile that characterization with what the record actually reflects, nor are we willing to chalk it up to "an inartful slip of the tongue" as the government suggests we should.

To the extent the district court was drawing inferences to find the drug use during Colón's term of supervised release was constant, that approach meets the same clear-error fate. A "constantly" using inference is wholly implausible on this record because there are no adequately supported facts to permit it. Instead, what the record clearly reflects is that fifteen of seventeen tests came back negative, the two positives (for cannabinoids only, remember) were 6 months apart, Colón had been engaged in his drug treatment program, and the presumptive pot found in Colón's car was never even tested. These are not

"constantly" using facts, nor do they even approach a set of facts that would permit such an inference.

And so, either reading of the district court's finding would yield the same clear-error conclusion for us.

Resisting this conclusion and trying to show us any mistake in this regard didn't affect Colón's sentence, the government reasons that the court's reliance on the drug tests wasn't an instance of the proverbial tail wagging the dog since the tests were just one of several violations the court relied on when imposing sentence. True enough, the court had before it evidence of Colón's other violations. But on this record, we do not know precisely to what degree the court relied on its erroneous constant-use fact, whether based on a misunderstanding of the record or extrapolated from the record, in fashioning the resulting sentence. See, e.g., Navarro-Santisteban, 83 F.4th at 56 (remanding when it was not possible to "extricate the influence" of the court's erroneous reliance on tainted hearsay evidence "from the court's broader sentencing rationale"). We thus cannot conclude that the procedural error here did not affect the selection of the imposed sentence.[9]

---

[9] Before we go, a quick word on the Bureau of Prisons' 500-hour drug and alcohol treatment program, which was recommended by the court as part of Colón's sentence. The government suggests the court mentioned these past-drug-use facts so Colón could benefit from the 500-hour program. This doesn't track for the

## CONCLUSION

We <u>vacate</u> Colón's sentence and <u>remand</u> to the district court for resentencing consistent with this opinion.  In light of this disposition, we leave untouched and intimate no view on Colón's other appellate challenges to his sentences.  On remand, the parties may pursue the other issues raised in their briefs we need not reach today, to the extent those other issues remain relevant.

The Clerk of the District Court is directed to assign this case to a different judge on remand for prompt resentencing. <u>See</u> 28 U.S.C. § 2106; <u>see also</u> <u>United States</u> v. <u>Muniz</u>, 49 F.3d 36, 41 (1st Cir. 1995) (remanding to a different judge where the original sentence was grounded on unsupported findings of fact);

---

revocation sentence rationale.  For one thing, the court mentioned the 500-hour treatment program much earlier in the sentencing -- for the new conduct, not as part of the revocation sentence rationale.  For another, the court could've referred Colón to the 500-hour program without stating he "constantly" used drugs during his supervision period -- or it could have been more clear that it was saying so for the purpose of anchoring the order for the treatment program (though again, this still doesn't square with characterizing Colón's <u>prior</u> use as "constant[]" use "through his supervision period").  What's more, the record bears out that the treatment program may have been ordered because the defense imbued its sentencing arguments with the importance of substance abuse treatment (of note, defense counsel below suggested Colón might not qualify specifically for the 500-hour program because it requires a GED (which Colón does not have); and even then, we note there is no guarantee the Bureau of Prisons will be able to accommodate such a referral).

All to say, this point does not move the analytical needle for us.

- 35 -

Mawson v. United States, 463 F.2d 29, 31 (1st Cir. 1972) ("It is difficult for a judge, having once made up his mind, to resentence a defendant, and both for the judge's sake, and the appearance of justice, we remand this case to be redrawn."). The district court will base resentencing on the existing factual record, supplemented if appropriate by evidence of events that occurred after the date of the most recent prior sentencing.