**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 20-1170

UNITED STATES OF AMERICA,

Appellee,

v.

KEVIN JADIEL FIGUEROA-ROMAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Hamilton* and Thompson, Circuit Judges.

Syrie D. Fried, with whom Good Schneider Cormier & Fried was
on brief, for appellant.

Gabriella S. Paglieri, with whom W. Stephen Muldrow, United
States Attorney, and Mariana E. Bauzá-Almonte, Assistant United
States Attorney, Chief, Appellate Division, and Maarja T. Luhtaru,
Assistant United States Attorney, were on brief, for appellee.

---

* Of the United States Court of Appeals for the Seventh
Circuit, sitting by designation.

July 18, 2024

**THOMPSON**, **Circuit Judge**. Kevin Jadiel Figueroa-Roman ("Figueroa-Roman") went on a carjacking spree in April 2019, participating in multiple carjackings alongside three associates (ultimately codefendants) with the endgame of selling the stolen cars. Caught, arrested, and indicted,[1] Figueroa-Roman struck a deal and pleaded guilty to four counts of aiding and abetting his cohorts. On appeal, he challenges the 108-month sentence he was given by the district court. Figueroa-Roman says that sentence is procedurally unreasonable because the court inadequately explained its sentencing rationale and impermissibly relied on factors that were either already accounted for in the guidelines calculations or were unsupported by the record. As we'll explain, writing solely for the parties as we do so, we vacate and remand for clarification. We can keep our discussion succinct.[2]

---

[1] In July 2019, a grand jury rendered a seven-count superseding indictment against Figueroa-Roman and his codefendants. Four of those counts were against Figueroa-Roman, all for violations of 18 U.S.C. § 2119 and 18 U.S.C. § 2, aiding and abetting, with the intent to cause death or serious bodily harm, in the taking of a motor vehicle from the person of another by force, violence, and intimidation.

[2] Since Figueroa-Roman's sentencing appeal comes on the heels of him pleading guilty, the facts we recite today are "from the plea agreement, the change-of-plea colloquy, the undisputed portions of the presentence investigation report ('PSR'), and the transcript of the disposition hearing." United States v. Rivera-Santiago, 919 F.3d 82, 83 (1st Cir. 2019) (quoting United States v. O'Brien, 870 F.3d 11, 14 (1st Cir. 2017)).

Our outcome today is propelled by a comment the district court made during Figueroa-Roman's sentencing colloquy. To get our bearings, we'll zip back in time to the sentencing hearing -- beyond the parties' arguments, up to the part where the sentencing judge is offering his reasoning as he pronounces sentence. The district court determined that the parties' requested sentences (while probation calculated a guidelines sentencing range of 70 to 87 months' imprisonment, Figueroa-Roman asked for 63 months' imprisonment[3] and the government suggested 70.5 months' imprisonment) failed to reflect the seriousness of the offense, promote respect for the law, protect the public from further crimes by Figueroa-Roman, or address deterrence and punishment. The court went on (emphasis ours):

> The Court has balanced Mr. Figueroa's lack of a criminal record, the pro-social support he enjoys from his family, with the seriousness of the offense, their violent nature, the psychological impact caused to the victims, and <u>Mr. Figueroa's association with convicted</u>

---

[3] Actually, he requested a sentence in accordance with what he sought in his sentencing memorandum, which was a downward variance and a sentence of 36 months of imprisonment -- but, as the government suggests on appeal, this was probably a typo. Certainly the sentencing court understood Figueroa-Roman to have requested 63 months as it indicated as much during sentencing (and no one chimed in with an objection or correction).

- 4 -

<u>felons</u> when assessing Mr. Figueroa's risk to the community once he is released.

The court imposed 108 months' imprisonment as to each count, to be served concurrently.

As part of his argument to us on appeal, Figueroa-Roman zeroes in on the sentencing court's reliance on Figueroa-Roman's "association with convicted felons," which he says is a problem: There is no evidence that his codefendants were convicted felons before the carjacking offenses. True, they were about to become felons in consequence of the indictment and ensuing plea deals.[4] But Figueroa-Roman urges that there's nothing in his sentencing record to indicate that any of his cohorts otherwise had engaged in pre-carjacking felonious conduct -- or that Figueroa-Roman knew about any such conduct.

The government offers a different take on the court's "association with convicted felons" comment, arguing to us on appeal that "it is possible that, when 'assessing [] Figueroa's risk to the community once he is released,' the district court meant to refer to Figueroa's and his co-defendants' decision to engage in a joint, week-long crime spree that resulted in felony convictions, rather than any of their prior crimes," particularly

---

[4] After Figueroa-Roman's September 6, 2019 change-of-plea hearing, his comrades followed suit and changed their pleas to guilty as well, with plea agreements following closely on the heels of each change-of-plea hearing (with all hearings taking place before this same district court judge).

when the record bears out that they were childhood friends. Most importantly, says the government, there were other legally adequate reasons for the court's upward variance (like the violence involved in the offense and the victim impact statements).

From our vantage point, we perceive a few aspects of this "convicted felons" comment that obstruct meaningful appellate review.

For starters, we conclude it is unclear what the sentencing court meant when it referred to Figueroa-Roman's "association with convicted felons." That item in the list of things the court was balancing has ambiguities baked into it that spark a spate of questions -- mainly of the "who," "what," and "when" variety. Are the "convicted felons" Figueroa-Roman's carjacking codefendants? And was the court saying those codefendants were felons at the time of the offense? At the time of Figueroa-Roman's sentencing? Post-release (and/or likely to associate upon that release)? Was the court referring to some other convicted felons? At what point is Figueroa-Roman doing the "associat[ing]" with these felons, whomever they are? And what is the significance of any such "association" when Figueroa-Roman had no criminal record at the time of his offense and (unlike with some repeat offenders, for instance) the record reflects no prohibition on this first-time-offender's association with anyone?

All of this to say, the court's comment begs many questions, and the transcript can reasonably be read in different ways.

Relatedly, not only is the meaning of the court's comment unclear, but also the manner in which we'd review it and its role in the sentencing determination is murky. Because we do not know what the court meant when it made this comment, it's not clear to us whether it was supposed to be a reference to a certain fact, a new finding of fact, or something else. This could impact our standard of review.

And likewise unclear is how, if at all, we might extrapolate the role this "association with convicted felons" consideration played in the sentencing -- without an understanding of what the court meant by it, we cannot assess whether and to what extent it affected the sentencing explanation. See, e.g., United States v. Colón-Cordero, 91 F.4th 41, 58 (1st Cir. 2024) ("But on this record, we do not know precisely to what degree the court relied on its erroneous . . . fact, whether based on a misunderstanding of the record or extrapolated from the record, in fashioning the resulting sentence."); United States v. Navarro-Santisteban, 83 F.4th 44, 56 (1st Cir. 2023) (remanding because we couldn't "extricate the influence" of the court's

erroneous reliance on tainted hearsay evidence "from the court's broader sentencing rationale").

Under some circumstances and at certain junctures, we sometimes can discern what a sentencing court meant by making reasonable inferences and using the context available to us from our cold appellate vista. See, e.g., Colón-Cordero, 91 F.4th at 51, 53 (collecting examples and discussing how, when trying to pin down the adequacy of a sentencing rationale, we can sometimes draw inferences from the sentencing record). Not so here. The transcript is susceptible to various plausible understandings of what was said. See United States v. Serrano-Berríos, 38 F.4th 246, 250-51 (1st Cir. 2022) (remanding for clarification when it was "unclear what the court meant by" a statement that was open to multiple interpretations and not clearly tethered to the sentencing record); United States v. Cáceres-Cabrera, 219 F. App'x 18, 19 (1st Cir. 2007) (remanding for clarification when "[t]he sentencing transcript can be read to support either side's argument as to the court's reasons").

All told, this confusion -- from basic meaning to the downstream effects of that uncertainty on our lens of review -- has a material impact on our ability to undertake meaningful appellate review. See, e.g., United States v. Carrión-Meléndez,

26 F.4th 508, 513 (1st Cir. 2022) (observing that appellate review is frustrated when the reasons underpinning a ruling are unclear).

Accordingly, in need of the aforementioned clarity to proceed, the most prudent course here is for us to vacate and remand so the court can clarify what it meant by Figueroa-Roman's "association with convicted felons." See id. (taking a similar approach, deciding "that it is prudent to give the District Court the opportunity to clarify and, if appropriate, reconsider the precise basis for" its rationale relative to the application of a sentencing enhancement); see also United States v. Gilman, 478 F.3d 440, 446-47 (1st Cir. 2007) ("[I]f we are in fact unable to discern from the record the reasoning behind the district court's sentence, appellate review is frustrated and 'it is incumbent upon us to vacate, though not necessarily to reverse' the decision below to provide the district court an opportunity to explain its reasoning at resentencing." (quoting United States v. Feliz, 453 F.3d 33, 36 (1st Cir. 2006)) (citing United States v. McDowell, 918 F.2d 1004, 1012 (1st Cir. 1990))); United States v. Levy, 897 F.2d 596, 599 (1st Cir. 1990) ("Where, as here, the record admits of possible ambiguity, our practice is to remand for a limited purpose.").

To be quite clear, we leave untouched and intimate no view on the adequacy of the court's sentencing explanation or any other question raised in this appeal. All we are saying today is

that we find ourselves unable to proceed to a meaningful review of aspects of this appeal without this "association with convicted felons" quandary cleared up. And that is so even if we are on plain error review, given the potential for prejudice depending on the statement's intended meaning. Cf. Gilman, 478 F.3d at 447-48 ("Even if the shortfall of the court's explanation in that respect is viewed as an obvious error, that would leave Gilman standing only at second base. To make it to home plate by establishing plain error, Gilman must round each of the bases as to which he carries the burden of persuasion. . . . While in this instance the district court's statement at the sentencing hearing itself was inadequate as a matter of law, the record provides no reason to believe that remanding this case to the district court for resentencing would in any way alter Gilman's sentence.").

For these reasons, we vacate the sentence and remand to the district court for clarification in accordance with this opinion. This panel retains jurisdiction over this matter.