# United States Court of Appeals
## For the First Circuit

No. 07-1063

UNITED STATES OF AMERICA,

Appellee,

v.

BILLY ROY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Chief Judge,

Lynch, Circuit Judge,

and Schwarzer,[*] Senior District Judge.

Robert C. Andrews for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief for appellee.

October 23, 2007

_____

[*]Of the Northern District of California, sitting by
designation.

**BOUDIN, <u>Chief Judge</u>.** On April 9, 2001, after pleading guilty to possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B) (2000), Billy Roy was sentenced to 24 months in prison and three years of supervised release. Among the conditions of Roy's supervised release were that he participate in a mental health program and avoid contact with children under age 18 without the approval of his supervisor.[1]

Since his release from prison on the pornography conviction, Roy's supervised release has been revoked on three occasions for, among other things, having contact with the two young children of his girlfriend, Jennifer Woodward. On the first occasion, Roy was sentenced in 2004 to four months in prison and 32 months of supervised release; one of the conditions of supervised release required Roy to spend three months in community confinement after release from prison.

Roy's supervised release was revoked a second time in July 2005, for his failure to comply with the terms of his mental health treatment program by continuing to have contact with his girlfriend and her children. This time he was sentenced to eight months in prison and an additional term of 24 months of supervised release. <u>United States</u> v. <u>Roy</u>, 438 F.3d 140, 142 (1st Cir.), <u>cert. denied</u>, 126 S. Ct. 2945 (2006). Shortly after his release, Roy was

---

[1]The condition is readily explained: Roy was also convicted in 1998 of unlawful sexual conduct. The victim was a 14-year-old girl who had been babysitting for Roy's nephews.

once again arrested for violating the terms of supervision by again having contact with Woodward's young children; he was sentenced to 12 months in prison.

Roy now appeals the third revocation sentence. His main argument is that he was protected by a 24-month aggregate limit on prison time for violations of supervised release; that his three months of community confinement imposed as part of the first revocation sentence should count toward that aggregate cap; and therefore that--counting the first as seven months and second as eight--his sentence on the third revocation could be no more than nine months (24-(7+8)=9).

Roy did not raise this objection in the district court. The probation report on the third revocation assumed that the maximum sentence was 12 months, as did the sentencing judge and the parties. The government now says that the applicable aggregate maximum was 36 months; Roy says it was 24 but that community confinement counts. We do not need to resolve either contention because Roy's claim of error does not meet the requirements for plain error review.

Under United States v. Olano, 507 U.S. 725, 732 (1993), the formal requirements for recognizing plain error are that the claimant satisfy each of four different tests by showing: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4)

seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Combined, these requirements set a very high threshold and deliberately so.  The job of the lawyer is to tell the judge when a mistake is being made while it can readily be corrected; the cost of undoing a mistake raised for the first time on appeal can be very high.  Even in criminal cases, mistakes by counsel not meeting plain error standards are tolerated--unless counsel is deficient to the point of incompetence prejudicing the defendant. United States v. Torres-Rosario, 447 F.3d 61, 64 (1st Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

That the error be "plain" is a central part of the Olano requirements but its rationale may be less evident than the other three requirements.  Probably one reason for requiring "plainness" is the notion that a judge even without objection should respond to obvious errors; but a more prudential reason is that "close cases" involve issues that could be decided either way, while blatant errors, when left uncorrected, are more disturbing to public confidence in the trial process.

The last of these reasons may explain why, contrary to one's first instinct, the Supreme Court has ruled that an error not "plain" or previously settled at the time the district court ruled can become "plain" where, prior to appellate review, intervening

law has resolved the issue clearly.  <u>Johnson</u> v. <u>United States</u>, 520 U.S. 461, 468 (1997).  But the  requirement of "plain" error would be abolished if the issue is still debatable before the appeals court hears the case and becomes plain only because the court then resolves it.  An error is normally plain <u>after</u> the court has ruled.

Here, it was not "plain" when the district court acted, and is not now "plain" on appeal, whether the time spent in community confinement as a part of supervised release following an earlier revocation should or should not count toward an aggregate limit on the maximum period of imprisonment for a series of revocations.  Neither statutory text, substantial precedent or policy considerations clearly answer the question in Roy's favor. Arguably, there was no error; if error existed, it was not plain.

Under the statute, the district court is permitted for violation of conditions to "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute," 18 U.S.C. § 3583(e)(3), subject to a statutory cap,[2] which we read as applied to the aggregate of all time served for such violations.  <u>United</u>

---

[2]Section 3583(e)(3) says in relevant part that "a defendant whose term is revoked under this paragraph may not be required to serve . . . more than 3 years in prison if [the underlying] offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case." We do not reach the question, which is in dispute, of whether Roy's case is affected by the PROTECT Act of 2003's modification of this section.  PROTECT ACT, Pub. L. No. 108-21, tit. I, § 101, 117 Stat. 650, 651 (2003).

States v. Tapia-Escalera, 356 F.3d 181, 187-88 (1st Cir. 2004). Whether time in community confinement counts as time "in prison" is not answered by text or further definition.

Neither do policy considerations settle the issue: prison might be conceived of as the most restrictive form of punishment; where community confinement or home detention fall on a spectrum between incarceration and complete freedom of movement is a question with no precise answer; neither is the relative relationship between the former two. And, both community and home confinement can be more or less restrictive depending on the facilities themselves or the type of monitoring required by the district court.

Roy cites to no authority supporting his contention that time spent in community confinement must be credited toward the statutory maximum; indeed, precedent seems to weigh in favor of the government. See United States v. Horek, 137 F.3d 1226, 1229 (10th Cir.), cert. denied, 525 U.S. 88 (1998) (holding that community confinement need not be deducted from maximum term of imprisonment when sentencing a defendant whose probation has been revoked); cf. United States v. Adler, 52 F.3d 20, 21 (2d Cir. 1995) (recognizing that community confinement does not qualify as imprisonment counting toward minimum term).

Our view would not change were we to accept Roy's argument that community confinement should be treated no

differently from home detention.  Though some circuits have held that credit for home detention is required toward the statutory cap,[3] other courts have come out the other way, see United States v. Hager, 288 F.3d 136, 138 (4th Cir.), cert. denied, 537 U.S. 962 (2002), and we have yet to resolve the issue, cf. United States v. Martin, 363 F.3d 25, 37-39 (1st Cir. 2004) (holding that, for purposes of double jeopardy, defendant must receive credit--though not day-to-day credit--for time spent in community confinement or home detention).  Anyway, the equation of home detention and community confinement is itself an open question.

In short, we think the 12-month term was not plain error and turn to Roy's remaining argument, which was preserved.  Roy argued in the district court, and again on appeal, that he should have been sentenced to a halfway house because his medical condition (high cholesterol) could not be well treated in prison. The district court's decision turns on factual and discretionary judgments where the standard of review is weighted against Roy.

---

[3]United States v. Ferguson, 369 F.3d 847, 851 (5th Cir. 2004); see also United States v. Kravchuk, 335 F.3d 1147, 1159 (10th Cir.), cert. denied, 540 U.S. 941 (2003) (finding that sentence of 27 months imprisonment plus three months of home detention required as part of supervised release constituted an upward departure where the guidelines permitted a maximum sentence of 27 months); United States v. Leaphart, 98 F.3d 41, 43 (2d Cir. 1996) (precluding imposition of the maximum term of incarceration under section 3583(e)(3) in addition to a period of home detention under subsection (e)(4)).

Roy offers a colorable argument that community confinement may be imposed under section 3583 despite the statute's failure to so explicitly provide, but the question is not whether the court <u>could</u> have sentenced Roy to a halfway house but instead whether its failure to do so was an abuse of discretion. <u>See</u> <u>United States</u> v. <u>Ramirez-Rivera</u>, 241 F.3d 37, 40-41 (1st Cir. 2001). Indeed, Roy argues only that "direct placement in Pharos House <u>may</u> be imposed in this case" and supports this claim by reference to 18 U.S.C. § 3563(b), which sets forth "[d]iscretionary conditions" of probation.

The district judge balanced the extremely serious nature of Roy's conduct against the medical concerns and the prospect that better treatment might be available in a halfway house environment. Weighing these factors, the court concluded that the proper balance was a 12-month sentence accompanied by a recommendation that Roy receive proper medical treatment in the prison setting. This was not an abuse of discretion.

<u>Affirmed</u>.