NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 11a0199n.06

No. 07-3070

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 01, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| WILLIAM F. HARBOUR, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: KENNEDY and MARTIN, Circuit Judges; MURPHY, District Judge.[*]

**KENNEDY, Circuit Judge.** William Harbour was convicted of attempting to receive by mail DVDs containing visual depictions of minors engaged in sexually explicit conduct and of possessing a computer containing child pornography. He appeals the district court's denial of his motion to continue his trial, arguing that the district court abused its discretion. For the reasons that follow, we **AFFIRM**.

FACTUAL AND PROCEDURAL BACKGROUND

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office summarized the underlying facts in this case as follows:

> On or about September 2002, the U.S. Postal Inspection Services, Miami Field Office, arrested Angel Mariscal as part of a separate child pornography investigation. . . . Mr. Mariscal utilized the business name "CRT" (Cultural Research Team), produced child pornography outside of the United States, imported it into the United States, and then mailed/shipped it to customers who had previously placed orders in response to mailed advertisements/catalogs. . . .

---

[*]The Honorable Stephen J. Murphy III, United States District Judge for the Eastern District of Michigan, sitting by designation.

During the investigation of Mr. Mariscal, Postal Inspectors found the names of individuals identified in order forms, correspondence and/or other paperwork seized from Mr. Mariscal. Among the seized documents were order forms from [defendant] William Harbour . . . . The documents indicated that during the period between May 12, 1998 and April 26, 1999, Mr. Harbour, on four separate occasions, ordered a total of eight videos from Mr. Mariscal, and CRT, in exchange for $367. The titles of the videos were "Photo Sessions," "Teen Modeling," "Teen Workout," "Dancing Aerobics," "Aquapark," "Lingerie Display," " Dreamers Models," and "Art & Beauty 5&6."

On April 8, 2004, as part of a U.S. Postal Inspection Service undercover operation, Postal Inspectors mailed a two page flyer to Bill Harbour . . . . The flyer, [sic] contained an undercover business name and address offering "taboo," "forbidden," and "hard" to find videos in VHS and DVD formats. The flyer also contained a catalog request form which allows the recipient to identify their interests in sexually oriented material.

On or about April 20, 2004, Postal Inspectors received a response from the defendant containing the handwritten completed catalog request form previously mailed to the defendant. The defendant had selected the interests of Pre Teen Girls; Young Teen Girls (13-16); and that he was interested in buying and/or trading.

On or about May 11, 2004, Postal Inspectors sent an undercover response letter to Mr. Harbour, consisting of an order form and movie listing with descriptions. The order form also contained a disclaimer clearly indicating the movies are "forbidden in the USA and many parts of the world." The order form also contained a listing of the movies with titles and descriptions and read in part; "Young Teen and Pre Teen Girls (all ages are real!!)."

On or about June 29, 2004, the Postal Inspectors received a response from Mr. Harbour, which contained a Travelers Express money order in the amount of $60, with the request for three movies: 7 Sherri (which the description indicated was of a 10 year old girl getting sexually abused); Tammy Learns (which the description indicated was of a 14 years old whore who exposes herself and uses a dildo on herself); and No Way (which the description indicated was of a 9 year old girl being molested with her hands tied and looks as if she is being raped).

Postal Inspectors then prepared an Express Mail envelope with three disks that met the description of those ordered. The envelope, while under surveillance until it was received at the defendant's residence, was delivered to Mr. Harbour on July 21, 2004.

A search was conducted on the defendant's residences after receipt of the movies on July 21, 2004. During the search, Postal Inspectors recovered the three movie disks and the opened mailing envelope. Also found were numerous 8mm tapes and rolls of film which showed the defendant had traveled to area malls, parks and other areas and had taken pictures and videos of teen aged girls. Also, law enforcement found a computer with between 10 and 150 images of child pornography found in the temporary files and unallocated space.

On August 1, 2006, a federal grand jury in the Northern District of Ohio returned a two-count indictment against Harbour charging him with: (1) knowingly attempting to receive by mail three DVDs containing visual depictions of real, not virtual minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2); and (2) knowingly possessing a computer that contained child pornography in violation of 18 U.S.C. § 2252(a)(2).

Attorney David C. Jack was appointed to represent Harbour pursuant to the Criminal Justice Act ("CJA"). At his arraignment on August 22, 2006, Harbour pleaded not guilty. On August 25, 2006, the district court entered a scheduling order setting the pre-trial conference for September 22, 2006 and commencement of the jury trial for October 2, 2006.

On September 20, 2006, Harbour filed a motion to continue the pre-trial conference and trial. In this motion, Harbour argued:

> Defendant and the government have not been able to review important evidence that is necessary for the Defendant to present an adequate defense. Specifically, Count II of the indictment charges, [sic] possession of a computer that contains child pornography. The computer in question was obtained from Rent-A-Center and neither the Defendant nor the government at this time have been able to determine what information may have been on the computer prior to the Defendant obtaining possession of the computer.
> Defendant has attempted to obtain possession of the appropriate information and has been unsuccessful. Defendant does not anticipate that he will receive the information prior to the pretrial and also will not have adequate time to prepare for trial on October, [sic] 2006.

At the pre-trial conference on September 22, 2006, the district court granted Harbour's motion to continue the trial and rescheduled the jury trial to commence on October 23, 2006.

On September 26, 2006, through Attorney Jack, Harbour moved for the appointment of an expert to analyze the computer alleged to contain child pornography. In support of his motion, Harbour argued that "[a]n expert is necessary for the Defendant to present an adequate defense

3

because the government is alleging that pornography contained on the Defendant's computer was knowingly placed there by the Defendant and the Defendant disputes said claim. The expert is necessary to determine the dates relative to the pornography." The government did not object to Harbour's request for the appointment of an expert and the district court granted the motion on October 7, 2006.

On October 11, 2006, the district court held a status conference. At that time, Attorney Jack stated on the record that he believed that the case was near resolution. The district court explained that it wanted to reschedule the trial because of other cases set for trial on October 23, 2006 and that it hoped to advance the trial schedule by a week. Attorney Jack did not object. On October 12, 2006, the district court rescheduled trial to commence on October 18, 2006, five days earlier than previously scheduled.

Another status conference was held on October 16, 2006. The district court first inquired as to whether Harbour was going to change his plea. Attorney Jack responded that Harbour told him that morning that he had retained new counsel. Harbour spoke at the conference and requested a continuance of the trial because of the retention of counsel. The court denied the request. That same day, Harbour filed an entry of appearance for retained counsel Myron Watson and Fernando Mack. Attorney Jack was terminated as counsel, but the district court instructed him to assist at trial.

On October 17, 2006, Harbour's new attorneys filed a second motion to continue the trial. In support of the motion, Harbour's attorneys argued:

> 1. That counsel was just retained yesterday (October 16, 2006) by the Defendant in the above captioned case;
> 2. That counsel has been advised by his client that he was unsatisfied with the performance of his prior counsel, who had not reviewed relevant documents, and it

4

is the client's belief that he and his prior counsel were not prepared to proceed with a trial;

3. That present counsel is seeking a continuance for reason that we have been unable to review all of the necessary documents in this case to be conversant in trying this case by tomorrow (October 18, 2006) morning;

4. That counsel spoke with the Defendant on two prior occasions, however these conversations are woefully insufficient to prepare for a trial of this magnitude and significance;

5. That the Defendant is entitled to effective assistance of counsel, and his present counsel would be unable to be prepared for trial without sufficient time to review and analyze all of the relevant factual and legal issues; and

6. That counsel is not seeking a continuance to unduly delay these proceedings, but only to provide our client with effective assistance of counsel, to which he is entitled.

On October 17, 2006, the district court granted Harbour's motion and rescheduled the trial to commence on October 24, 2006.

On October 19, 2006, Harbour again moved to continue the trial. In this motion, he argued:

1. That counsel was just retained on October 16, 2006 by the Defendant in the above captioned case;

2. That counsel has been advised by the Government, Assistant U.S. Attorney Michael Sullivan, that there are voluminous 8 millimeter films and videotapes that were seized by the Government and have not been viewed by counsel.

3. That counsel is scheduled to meet with the case agent on October 20, 2006 at 10:00 a.m. at the U.S. Attorney's office to view all of the Government's evidence, including 8 millimeter films and videotapes, that he might utilize as evidence in this case.

4. That present counsel is seeking a continuance for reason that we will be unable to fully review all of the relevant films, videotapes and documents in this case to be prepared for the trial of this matter by October 24, 2006;

5. That the Defendant is entitled to effective assistance of counsel, and his present counsel will be unable to be prepared for trial without sufficient time to review and analyze all of the Government's evidence (which includes, according to the Government, maybe eighty-five [85] videotapes/films); and

6. That counsel is not seeking a continuance to unduly delay these proceedings, but only to provide our client with effective assistance of counsel, to which he is entitled.

The district court denied this motion on October 20, 2006, noting:

Defendant was appointed counsel on 8/22/06, granted a continuance on 9/22/06 as to the original trial date of 10/2/06 and granted the services of an expert on 10/7/06.

5

Defendant retained counsel on 10/16/06 and on 10/17/06 defendant was granted a second continuance of the trial date. The motion for a continuance of the 10/24/06 trial date is denied. Original CJA counsel on this case, David Jack, shall appear for trial on 10/24/06 . . . to assist retained counsel as needed.

On October 23, 2006, Harbour moved for reconsideration of the court's denial of his October 19, 2006 motion. In support of this motion, Harbour argued:

1. That the docket reveals that Defendant's prior counsel had sought an appointment of a Forensic Expert which was granted by the Court on October 7, 2006;
2. That an expert was never retained by prior counsel to examine the computer seized by the Government, or to review any expert reports or findings made by the Government's expert;
3. That counsel was, on Friday, October 20, 2006, advised that the Government seeks to use expert testimony regarding erased photo images, file folders showing pornographic pictures, and e-mail transmissions purportedly taken from the Defendant's computer;
4. That the Defendant should be allowed to hire his own expert to challenge the validity of the Government's expert findings;
5. That defense counsel is likewise concerned that it was unable to view **all of the** voluminous film/videotape evidence in the possession of the Government;
6. That counsel is seeking this continuance only for the purpose of providing the Defendant with effective assistance of counsel, to which the Defendant is entitled.

(emphasis in original). On October 23, 2006, the district court denied Harbour's motion to reconsider without further explanation.

Trial commenced on October 24, 2006, as scheduled. Prior to the jury being seated, Harbour's counsel reiterated his desire to continue the trial. Attorney Mack also expanded on the arguments raised in Harbour's October 23, 2006 motion regarding the retention of an expert witness and the films and videotapes in the government's possession. On the subject of the expert witness, Attorney Mack argued that Harbour was entitled to have an expert witness examine the digital images to determine whether they depicted real or virtual children. The government replied that Harbour's prior counsel had intimated that an expert witness was needed to ascertain when the

6

images were put on the computer. Because the government conceded that it could not determine when the images were put on the computer, Harbour's prior counsel decided that an expert witness was no longer needed. The court again denied a continuance of the trial, explaining that the trial needed to commence shortly to avoid running afoul of the Speedy Trial Act.

After the trial ended on October 25, 2006, Harbour was found guilty on both counts of the indictment. Thereafter, Harbour was sentenced to 70 months' incarceration.

Harbour timely appealed.

## ANALYSIS

Harbour argues that the district court abused its discretion in denying his motion to continue the trial.[1]  We review a district court's decision to deny a motion for a continuance for abuse of discretion. *United States v. King*, 127 F.3d 483, 486 (6th Cir. 1997). "Trial judges necessarily require a great deal of latitude in scheduling trials[,] . . . [and] broad discretion must be granted [to] trial courts on matters of continuances." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). To succeed on appeal, an appellant must show that the denial resulted in actual prejudice. *United States v. Crossley*, 224 F.3d 847, 855 (6th Cir. 2000). "'Actual prejudice' is established 'by showing that a continuance would have made relevant witnesses available or added something to the defense.'" *Id*. (quoting *King*, 127 F.3d at 487). Harbour argues that he was prejudiced for two reasons: first, he was denied

---

[1]Harbour also argues that the district court erred in allowing testimony regarding CRT and the videos it had shipped to Harbour because there was no evidence that those videos contained child pornography. Harbour concedes that he did not object to the introduction of these materials at trial. Though he claims that this failure was "[p]erhaps a product of the relative unfamiliarity [his retained counsel had] with the case after only 8 days preparation," because Harbour failed to object to the admission of this evidence at trial, we review the district court's admission of the evidence for plain error. *See* Fed. R. Crim. P. 52(b). We hold that the district court did not commit plain error in admitting this evidence which established why Harbour was targeted for the undercover operation.

the ability to offer an expert witness at trial; and second, his retained counsel was unable to adequately review discovery materials. We disagree with both arguments and conclude that the district court did not abuse its discretion in denying Harbour's motion for a third continuance.

Harbour first argues that the district court should have granted his motion to continue the trial so that he could secure the services of a computer forensic and digital imagery expert. Harbour presents the issue on appeal as concerning a misunderstanding about whether the government was going to proceed on the second count of the indictment. According to Harbour, the government had conceded this count, but his counsel did not learn until October 20, 2006 that the government "intended to proceed on the charges contained in count 2 despite . . . this 'concession.'" Apparently the only concession by the government was that it could not ascertain when the digital images were placed on the allegedly rented computer, not that it was going to drop that count of the indictment.

Attorney Jack's motion to retain an expert witness quite plainly stated that it was for the purposes of determining when the digital images were placed on Harbour's computer—a perceived issue because of an allegation that the computer was a rental that had not always been in Harbour's possession or control. The government conceded that it could not offer evidence regarding when the images were placed on the computer. Consequently, Attorney Jack decided that the expert witness was unnecessary. At trial, however, defense counsel argued that a digital imagery expert was needed because it was possible that the images depicted were not of real children. This was an entirely new justification for the retention of an expert witness, one first raised in Harbour's motion for reconsideration a few days prior. The government disputed this argument, correctly noting that pursuant to 18 U.S.C. § 2256(8), the difference between child pornography created using real

8

children or images that were "indistinguishable" from images of real children was irrelevant for this case.

Though Harbour's stated need for a digital imagery expert is a moving target—in his appellate brief, he claims to have needed an expert witness to counter the government's expert witness and "to independently explore potential issues concerning digital imagery"—one fact is immutable: the district court authorized the retention of an expert for Harbour, and Harbour failed to retain such an expert. We are therefore left with a situation where a defendant sought and received authorization to retain an expert witness, declined to do so, and now claims on appeal that the district court abused its discretion in not providing additional time to the defendant to do exactly what he had not done previously. Indeed, Harbour entirely blames the district court for this and argues that he "was denied the benefit of those [expert] services because of the district court's refusal to grant a meaningful continuance of the trial." This is simply untrue. The only actor in this case who prevented Harbour from retaining an expert witness was Harbour, in conjunction with his appointed counsel.[2]

As for Harbour's argument that his counsel did not have adequate time to investigate and prepare for trial, we disagree. As the district court noted in its October 20, 2006 order, Harbour was appointed counsel on August 22, 2006 with an original trial date of October 2, 2006. The trial date was delayed twice at Harbour's request. The fact that Harbour waited until October 16, 2006 to retain new counsel was his decision and, in fact, the district court did grant a continuance after new

---

[2]For this reason, Harbour's citations to cases regarding the need for criminal defendants to be able to retain expert witnesses to aid in their defenses are irrelevant. Here, the district court agreed with Harbour's proffered reason for the need to retain an expert witness. Whether Attorney Jack erred in declining to retain a digital imagery expert is not a relevant inquiry for this court in considering whether the district court abused its discretion in denying Harbour's third motion for a continuance.

9

counsel was retained. The district court also required Attorney Jack to aid retained counsel at trial. Both of these facts that mitigate against any prejudice. *See United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984) (holding that there was no abuse of discretion when new counsel had a week to prepare for trial and "presumably had access to the fruits of appointed counsel's earlier preparation efforts"). Moreover, retained counsel did review the evidence provided by the government on October 20, 2006 and did not need to rely entirely on whatever work Attorney Jack had completed prior to his termination.

Indeed, when considering both of Harbour's arguments that the district court abused its discretion, we are struck that neither presents evidence of actual prejudice.[3] Other than retaining an expert witness on an immaterial topic or reviewing evidence and preparing arguments at a more leisurely pace, Harbour's appeal is strikingly bereft of an explanation as to what counsel would have done differently had the district court granted the continuance.[4] "Every lawyer on the losing side of a case probably feels that if he had had a little more time he might have done something else which

---

[3]This is also true for Harbour's related argument regarding his counsel's inability to review certain film and videotape evidence assembled against him. Because Harbour does not argue that had the government provided access to any particular evidence earlier he would have formulated a different defense, he has not demonstrated that he suffered actual prejudice by the district court's denial of his motion for a continuance. Harbour does not argue on appeal that the government improperly withheld any evidence, which would be a very different claim indeed from an allegation that the district court abused its discretion in denying Harbour's motion for a continuance.

[4]For example, Harbour suggests that if given an additional continuance, his counsel may have been better prepared for trial and objected to the district court's characterization to the jury of what digital imagery is. However, demonstrating that he does not even allege actual prejudice regarding this, he states on appeal: "While this may not have been a successful defense, it was **a defense**." (emphasis in original). While an appellant need not prove that an argument would have necessarily been successful if raised at trial, he must do more than claim that he could have done something differently and maybe that would have led to a different result. That truism does not demonstrate actual prejudice.

10

would have been helpful." *Martin*, 740 F.2d at 1361 (quoting *Sykes v. Commonwealth of Virginia*, 364 F.2d 314, 316 (4th Cir. 1966)).  Because Harbour has not shown that the district court's denial of his motion for a continuance actually prejudiced his defense, his appeal must fail.  *See King*, 127 F.3d at 486-87 (holding that the district court did not abuse its discretion in denying a motion to continue when, on appeal, the defendant could not present cogent arguments of how his trial defense was prejudiced in the absence of a continuance).

For these reasons, we **AFFIRM**.