# United States Court of Appeals
## For the First Circuit

No. 25-1683

UNITED STATES,

Appellee,

v.

ROBERTO ORTIZ-RODRÍGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Breyer,* Associate Justice,
Gelpí, Circuit Judge.

Laura I. Soto-Santiago, with whom Rachel Brill, Federal
Public Defender, and Franco L. Pérez-Redondo, Assistant Federal
Public Defender, Supervisor, Appellate Division, were on brief,
for appellant.
Maarja T. Luhtaru, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Juan Carlos
Reyes-Ramos, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

---

* Hon. Stephen G. Breyer, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

May 20, 2026

**BARRON**, **Chief Judge**.    In this appeal, Roberto Ortiz-Rodríguez ("Ortiz") challenges the revocation of his term of supervised release and his resulting sentence.  He does so chiefly on the ground that he was denied notice of one of the violations of his conditions of supervised release on which the sentence rests.  We affirm.

## I.

### A.[1]

In July 2021, Ortiz pleaded guilty in the United States District Court for the District of Puerto Rico to one count of knowingly possessing a firearm as a prohibited person (based on his status as a person with a qualifying felony conviction), in violation of 18 U.S.C. § 922(g)(1).  The District Court sentenced Ortiz to a forty-one month term of imprisonment, to be followed by a three-year term of supervised release.

The terms of Ortiz's supervised release included mandatory conditions that prohibited him from: (1) "commit[ting] another federal, state[,] or local crime"; (2) "unlawfully possess[ing] a controlled substance"; or (3) failing to "refrain from any unlawful use of a controlled substance."  His term of

---

[1] We draw the underlying facts from "the plea agreement," "the transcript[] of the . . . revocation hearing[]," United States v. Rosa-Borges, 101 F.4th 66, 69 (1st Cir. 2024) (citation modified), and the uncontested portions of the "motions submitted by [Ortiz's] probation officer to the [D]istrict [C]ourt," United States v. Maldonado-Negroni, 141 F.4th 333, 335 n.1 (1st Cir. 2025).

supervised release was also subject to a special condition that required Ortiz to "participate in an approved substance abuse monitoring and/or treatment services program" and to submit to drug testing.

Ortiz began his term of supervised release in September 2024. Shortly thereafter, in October 2024 and February 2025, he submitted two urine samples in accord with the drug-testing condition. The first sample tested positive for marijuana, and the second for marijuana and cocaine. Ortiz agreed to participate in an outpatient substance abuse and mental health treatment program but left it without authorization on March 6, 2025.

In April 2025, Ortiz again submitted a urine sample in accord with the drug-testing condition. It tested positive for marijuana and cocaine. He once again agreed to participate in a substance abuse treatment program, this time at a residential treatment facility with outpatient treatment to follow.

On April 25, 2025, Ortiz's probation officer filed a motion that notified the District Court that Ortiz had violated the conditions of his supervised release. That motion stated that Ortiz had "incurred the following violations": (1) "MANDATORY CONDITION: 'YOU MUST REFRAIN FROM ANY UNLAWFUL USE OF CONTROLLED SUBSTANCES'" and (2) "SPECIAL CONDITION[:] 'THE DEFENDANT SHALL PARTICIPATE IN AN APPROVED SUBSTANCE ABUSE . . . TREATMENT

- 4 -

SERVICES PROGRAM.'" It also described the facts underlying those violations -- namely, the three positive urine samples and the facts of Ortiz's drug treatment described above. Finally, it requested that the District Court "take notice of the content of th[e] motion and allow [Ortiz] to continue under supervised release and to continue receiving treatment services." The District Court granted the motion.

Shortly thereafter -- on April 30, 2025 -- Ortiz "became hostile towards staff members" at the residential drug treatment facility, and a probation officer who was present at the time "had to de-escalate the situation."[2] Within the next week, Ortiz abandoned the program. His discharge report stated that he had been "seen under the influence of an unknown controlled substance or medication."

On May 15, 2025, Ortiz was admitted to yet another drug treatment program. Within his first several days in that program, Ortiz was "observed . . . with red eyes, appearing sleepy and displaying a negative attitude, which indicated he might be under the influence of a controlled substance."

On May 21, 2025, another urine sample that Ortiz submitted in accord with the drug-testing condition tested

---

[2] Ortiz does not appear to dispute this fact, but he does note that the motion "uses the label 'hostile' without providing an account of the specific conduct or speech acts that subjective term meant to cover."

positive for marijuana and cocaine. Ortiz's "negative" behavior at the treatment facility did not improve, and on May 23, 2025, a staff member at the facility "witnessed what appeared to be a synthetic cannabis cigarette fall from one of [Ortiz's] pockets." When confronted the following day, Ortiz admitted that he had used synthetic cannabis. He was removed from the program on May 28, 2025.

On May 30, 2025, Ortiz's probation officer filed a second motion notifying the District Court of Ortiz's alleged violations of the terms of his supervised release and requesting the issuance of an arrest warrant. That motion again identified the same two conditions as above as ones for which Ortiz had "incurred . . . violations": (1) the mandatory condition prohibiting unlawful use of controlled substances and (2) the special condition regarding participation in substance abuse treatment. The motion included the same facts as those in the first motion, as well as information about Ortiz's fourth positive urine sample and his continued lack of success in and compliance with his drug treatment programs.

The motion went on to state that, although Ortiz "has been respectful towards his probation officer, he has failed to abide by the substance use treatment programs designed to assist him" and "has been unable to comply with the conditions of his supervised release." On that basis, the motion requested that an

- 6 -

arrest warrant be issued and that Ortiz be brought before the court "to [s]how [c]ause as to why his [s]upervised [r]elease [t]erm should not be revoked."

**B.**

Ortiz was brought before a Magistrate Judge, who advised Ortiz of the supervised release violations "alleged in the [m]otion filed by" his probation officer. The Magistrate Judge ordered that Ortiz be appointed counsel. Ortiz waived his right to a preliminary revocation hearing, and the Magistrate Judge "found probable cause as to all violations included in the motion filed by" Ortiz's probation officer.

The case was then referred to a district judge on the United States District Court for the District of Puerto Rico, who held a hearing on revocation of Ortiz's supervised release. Ortiz's counsel stated at the hearing's outset that Ortiz was "not contesting the allegations." The counsel explained that Ortiz's mother had "tragically committed suicide a week before [Ortiz] was . . . released from prison," which "took a toll on [Ortiz]," leading him to "f[a]ll into a deep depression" and "self-medicat[e] . . . causing him to relapse." As mitigating factors, the counsel first noted that Ortiz had concerns about the health of his father, who had been admitted to the hospital and whose prognosis was "not good." She also highlighted Ortiz's compliance with other conditions of his supervised release, as

- 7 -

well as his recognition "that he needs to be committed to his rehabilitation." Ortiz requested a five-month term of incarceration, followed by three months in a residential reentry facility.[3]

The District Court then heard from the government, which did not oppose Ortiz's sentencing request. Although the government acknowledged that Ortiz had not complied with the terms of his supervised release despite having "been given all the resources available to the probation officer's office," it acknowledged the "special circumstance regarding [Ortiz's] dad's health." On that basis, it described Ortiz's sentencing request "in these particular circumstances" as "warranted."

The government concluded by requesting "that no additional supervised release term be imposed." It explained that, in its view, a sentence of five months' incarceration and three months in a reentry facility was "sufficient sanctioning in this case."

After noting that Ortiz did not contest the violations, the District Court stated: "[T]he Court finds that [Ortiz] violated the conditions of the supervised release term . . . by using controlled substances illegally[] and by not complying with the rules and regulations established as part of his outpatient

---

[3] Ortiz declined the opportunity to speak on his own behalf.

- 8 -

and inpatient substance abuse treatment as indicated in the motions filed by [Ortiz's] probation officer."  Accordingly, the District Court revoked Ortiz's term of supervised release.

The District Court then turned to the task of imposing the revocation sentence.

Under Chapter 7 of the United States Sentencing Guidelines Manual, a violation of a condition of supervised release is categorized as either Grade A, Grade B, or Grade C.  See U.S. Sent'g Guidelines Manual § 7B1.1(a) (U.S. Sent'g Comm'n 2024) [hereinafter "U.S.S.G."].[4]  Grade A violations include "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device" or "(B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years."  Id. § 7B1.1(a)(1).  Grade B violations include "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year."  Id. § 7B1.1(a)(2).  Grade C

---

[4] The Sentencing Guidelines were amended after the hearing was held before the District Court; the relevant guidelines addressing supervised release violations were relocated from § 7B to § 7C.  See U.S.S.G. app. C, vol. IV, amend. 835 (2025); U.S.S.G. §§ 7C1.1-1.5 (2025).  For clarity, we refer to and cite the Sentencing Guidelines as they existed at the time of Ortiz's sentencing.

violations include "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." Id. § 7B1.1(a)(3).

The District Court first found that Ortiz's conduct constituted a Grade B violation under § 7B1.1(a)(2) because "using controlled substances requires possession of controlled substances" and, "[u]nder Puerto Rico law, possession of controlled substances is an offense with a term of imprisonment of more than one year." It additionally noted that, "according to First Circuit case law, the presence of a controlled substance in [Ortiz's] urine constitutes possession of a controlled substance."[5]

Given the finding of a Grade B violation and that Ortiz had a Criminal History Category of III, the District Court calculated the recommended sentencing range under the Guidelines for his supervised release violations as eight to fourteen months of imprisonment. See U.S.S.G. § 7B1.4(a). The District Court then described the facts in the probation officer's motions, which it found showed that Ortiz was "unable to comply with the law or the conditions of supervision imposed." It explained that, "[t]o promote adequate deterrence" and "protect the public from

---

[5] The District Court did not cite a particular provision of Puerto Rico law, or a particular First Circuit case, as a basis for either proposition.

- 10 -

additional crimes by . . . Ortiz," "a sentence at the high end of the guideline range is . . . sufficient but not greater than necessary" to further the sentence's purposes. It then pronounced its judgment that Ortiz be sentenced to a fourteen-month term of incarceration.

The District Court stated that Ortiz "may appeal [the court's] findings if they are contrary to law" and asked the defense, "Anything else, [defense counsel]?" Ortiz's counsel responded with two objections. First, she "object[ed] to the sentence" on the ground that "it is more than necessary to achieve the goals of justice upon revocation." Second, she "object[ed] to the finding of the violations as [G]rade Bs" on the ground that "the guidelines distinguish [G]rade Cs and [G]rade Bs for a reason, and they distinguish the possession of a drug user for personal use and the criminal possession," stating that the two "should be treated differently."

The District Court "noted and denied" the objections and asked whether there was "[a]nything else." Ortiz did not respond. Counsel for the government responded that it had "[n]othing further."

Ortiz timely appealed.

## II.

Ortiz first contends that the District Court committed legal error by "sua sponte recharacteriz[ing]" his "technical

violations of [supervised release, namely] drug use and treatment noncompliance," "as felony drug possession." As Ortiz sees things, that error violated his due process rights and Federal Rule of Criminal Procedure 32.1 ("Rule 32.1") by denying him notice of the violation that served as the basis for the sentence imposed following revocation of the term of his supervised release. He explains that neither of the motions that were filed with the District Court "assert[ed], or even suggest[ed], that [he] had committed the offense of knowing possession of a controlled substance under" Puerto Rico law. On that basis, he argues that he lacked notice of "the nature and severity of the allegations" he was facing.

## A.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. At the sentencing stage of a revocation proceeding, the "minimum requirements of due process" to which a defendant is entitled include the right to receive "written notice of the claimed violations" and "disclosure . . . of evidence against him." Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973) (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Those rights have also been codified under Rule 32.1, which applies to revocations and modifications of supervised release. See Fed. R. Crim.

P. 32.1(b)(2)(A)-(B) (entitling a person subject to a revocation hearing to (A) "written notice of the alleged violation" and (B) "disclosure of the evidence against" him); see also United States v. Martin, 984 F.2d 308, 310 (9th Cir. 1993) (stating that Rule 32.1 "incorporates [Scarpelli's] same minimal due process requisites" in the supervised release revocation context).

Neither party disputes that Ortiz was entitled under Rule 32.1 to "written notice of [his] alleged violation[s]." Their disagreement concerns whether he received that notice.

The government contends that Rule 32.1 requires only that the defendant receive notice of the conduct that forms the basis for the alleged violations. It goes on to contend that Ortiz received such notice because he was informed of the positive drug tests that formed the basis for the District Court's finding of a Grade B violation. The government cites precedent of our sister circuits that hold that notice of the allegedly violative conduct is sufficient to satisfy Rule 32.1. See United States v. Gordon, 961 F.2d 426, 429-30 (3d Cir. 1992); cf. also United States v. Sistrunk, 612 F.3d 988, 992 (8th Cir. 2010) (holding that, as to an alleged violation of the condition prohibiting new crimes, "citation to the alleged statutory violation" is not required under Rule 32.1).

Ortiz's challenge relies, in part, on the Advisory Committee notes to Rule 32.1. They state that notice "must be

- 13 -

sufficient to apprise the [releasee] of the conditions of his [supervised release] which he is alleged to have violated, as well as the dates and events which support the charge." Fed. R. Crim. P. 32.1 advisory committee's note to 1979 amendment (quoting Kartman v. Parratt, 397 F. Supp. 531, 534 (D. Neb. 1975)). He also relies on other circuit court decisions that suggest that, for notice to comply with Rule 32.1, the defendant must be apprised of the specific condition which he allegedly violated. See United States v. Chatelain, 360 F.3d 114, 121 (2d Cir. 2004); United States v. Kirtley, 5 F.3d 1110, 1113 & n.4 (7th Cir. 1993); see also United States v. Havier, 155 F.3d 1090, 1093 (9th Cir. 1998) (holding that, if it is not otherwise evident, an asserted violation of the condition prohibiting commission of new crimes requires identification of the specific crime allegedly committed).

**B.**

In general, "[w]e review issues of law, including the [D]istrict [Court]'s interpretation of a Federal Rule of Criminal Procedure, de novo." United States v. Sevilla-Oyola, 770 F.3d 1, 10 (1st Cir. 2014). We similarly review de novo alleged denials of due process. See United States v. García-Oquendo, 144 F.4th 66, 73 (1st Cir. 2025). Where a challenge is unpreserved, however, our review is only for plain error. See United States v.

- 14 -

Rodríguez-Meléndez, 828 F.3d 35, 38 (1st Cir. 2016); United States v. Stile, 845 F.3d 425, 429 (1st Cir. 2017).

Ortiz argues that he preserved his contention that he was denied the required notice when he objected to his revocation sentence on the ground that "the guidelines distinguish" between Grade B and Grade C violations "for a reason." He contends that objection sufficed to "alert[] the court to the action the defense wished the court to take," even if it was "admittedly imperfect."

"The point of a timely objection," however, "is to bring a 'live' issue to the district court's attention at a time when the court can effectively address any error." United States v. Davis, 923 F.3d 228, 236 (1st Cir. 2019). We fail to see how Ortiz's objection constituted an objection to the lack of notice that would "enable [the District Court] to take appropriate corrective action" with respect to that specific deficiency. Lee v. Kemna, 534 U.S. 362, 378 (2002) (quoting Osborne v. Ohio, 495 U.S. 103, 125 (1990)); see also United States v. Whalen, 82 F.3d 528, 531 (1st Cir. 1996) (noting that, by first presenting an argument on appeal, the appellant had "deprived the district court of the opportunity to consider and rule on the issue").

Our decision in United States v. Colón-Cordero, 91 F.4th 41 (1st Cir. 2024), on which Ortiz relies, does not support a different conclusion. There, we determined that claims of sentencing error had been preserved after defense counsel objected

- 15 -

to the length of a sentence and its reasonableness in light of the defendant's "fact history." Id. at 49-50. We concluded that, when viewed in context, those objections were sufficient to "call[] the district court's attention to the perceived sentencing problems" -- namely, insufficient consideration of a mitigating characteristic, an erroneous factual determination, and insufficient explanation for an upwardly variant sentence. Id. at 48-49. The "thematic" overlap that we concluded in Colón-Cordero sufficed "to make the district court aware of the . . . claimed errors" is not present here. Id. at 50.

We also find unpersuasive Ortiz's contention that the plain error standard should not apply because "the circumstances provided [him with] no meaningful opportunity to object" below. He relies on United States v. Rodriguez, in which we declined to apply the plain error standard after concluding that "the defendant had no realistic opportunity to object before the entry of judgment." 919 F.3d 629, 635 (1st Cir. 2019). We reached that conclusion because the district court referred to the evidence only in a "statement [that] was part and parcel of the court's final decision" as pronounced from the bench. Id.

Here, however, the District Court expressly asked Ortiz whether he had "[a]nything else" following its sentencing pronouncement. Moreover, Ortiz's counsel took that opportunity to

object to the finding that Ortiz's conduct amounted to a Grade B violation.

Ortiz's final argument about preservation is that it "was not required" because the District Court's "ruling introduce[d] a new sentencing basis that could not reasonably have been foreseen by counsel." In support of that contention, Ortiz points to United States v. Cortes-Claudio, 312 F.3d 17, 24 (1st Cir. 2002). But, in addition to the fact that the sentencing basis at issue here was announced prior to the District Court's pronouncement of Ortiz's sentence, the District Court made the reasons for its decision clear before the hearing had concluded and gave Ortiz a chance to make the objection he now advances. Cf. id. at 19, 24. Yet Ortiz failed to take advantage of that opportunity.

## C.

Because plain error review applies, Ortiz must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Rodríguez-Meléndez, 828 F.3d at 38 (quoting United States v. Roy, 506 F.3d 28, 30 (1st Cir. 2007)). The government argues that Ortiz cannot do so in part because there was no error at all. It reasons that the allegedly violative conduct described in the motions that Ortiz's probation

- 17 -

officer submitted to the District Court sufficed to supply the required notice. We cannot agree.

A key purpose of Rule 32.1's notice requirement is to allow a releasee to prepare to defend himself against the charges against him. See United States v. Correa-Torres, 326 F.3d 18, 22 (1st Cir. 2003) (stating that Rule 32.1 "safeguard[s] the defendant's obvious stake in preserving his liberty"); Chatelain, 360 F.3d at 121 (stating that Rule 32.1 "notice must be sufficient to allow the releasee to prepare to defend against the charges"). The degree of punishment to which a person might be subjected may obviously loom large in that calculus.

Here, the probation officer's motions identified only two specified conditions of Ortiz's supervised release that had allegedly been violated: drug use and noncompliance with drug treatment. They did not identify the condition that prohibited new criminal conduct as also having been violated. So, even if the conduct that the motions identified as providing the basis for the two named violations itself could have provided a basis for finding that Ortiz also had committed that third violation, it is not evident from the identification of that conduct alone that Ortiz needed to defend himself against an allegation that he had violated that condition as well. Rather, Ortiz reasonably could have understood that his supervised release term was being revoked and that he would be sentenced based solely on the named violations

- 18 -

and not the additional one relating to knowing possession of a controlled substance.

After all, the government does not dispute that the violations specified in Ortiz's motions constitute Grade C violations, for which revocation is discretionary[6] and which, in Ortiz's case, carried a guideline sentencing range of five to eleven months. See U.S.S.G. §§ 7B1.3(a)(2), 7B1.4(a). By contrast, a violation of the condition prohibiting new criminal conduct constitutes a Grade B violation, for which revocation was mandatory[7] and which, in Ortiz's case, carried a guideline sentencing range of eight to fourteen months. See id. §§ 7B1.3(a)(1), 7B1.4(a). We note, too, that the government did not take a contrary position in the revocation proceedings, such as by arguing for a sentence inconsistent with the named violations and in that way potentially placing Ortiz on notice that he could be considered as having violated the condition prohibiting the

---

[6] The Guidelines in place at the time of Ortiz's sentencing stated that "the court may . . . revoke . . . supervised release" for a Grade C violation. U.S.S.G. § 7B1.3(a)(2) (2024). The 2025 Guidelines, by contrast, state that revocation "may be appropriate for a Grade C violation." Id. § 7C1.3(b) (2025).

[7] The Guidelines in place at the time of Ortiz's sentencing stated that, "[u]pon a finding of a Grade . . . B violation, the court shall revoke . . . supervised release." U.S.S.G. § 7B1.3(a)(1) (2024). The 2025 Guidelines state that revocation is "often appropriate for a Grade B violation." Id. § 7C1.3(b) (2025).

- 19 -

commission of new crimes.  In these circumstances, then, the notice that Ortiz received was insufficient.

The government does argue that we must conclude otherwise because Rule 32.1 provides only the right to receive notice of an alleged violation, not to receive notice of the applicable grade of any such violation.  The government points to the language of U.S.S.G. § 7B1.1(a), which defines the grade of violation by reference to the "conduct" of the releasee and not, in the government's words, "necessarily the specific condition of supervised release the defendant violated."  But the "grades" defined under § 7B1.1(a) are specifically of the "violations" of supervised release at issue.  See id.  And, as we have already explained, Rule 32.1 safeguards a releasee's right to receive notice of such alleged violations.

Notwithstanding that there was error, we need not decide whether that error was "clear or obvious."  Rodríguez-Meléndez, 828 F.3d at 38 (quoting Roy, 506 F.3d at 30).  The reason is that Ortiz has failed to meet his burden to show that the error "affected [his] substantial rights," id. -- something he can do only by showing "a reasonable likelihood that, but for the claimed error, his sentence would have been different," United States v. Rabb, 5 F.4th 95, 103 (1st Cir. 2021); see also United States v. Abraham, 63 F.4th 102, 110 (1st Cir. 2023) ("To show that an

- 20 -

error . . . affected his substantial rights, an appellant must demonstrate prejudice . . . .").

Ortiz does argue that, "[h]ad he received proper notice," "he could have contested the violations" or "presented evidence about the specific substances involved." He conspicuously fails to assert, however, that he would have argued that he in fact did not possess illicit substances.

Ortiz also argues that, had he had the notice in question, he could have "challenged the legal theory of constructive possession" relating to his positive urine tests. But he again fails to explain what arguments he would have advanced to the District Court had he had an opportunity to do so. In the portion of his brief addressing First Circuit caselaw concerning drug possession having been inferred from evidence of drug use, Ortiz does not develop an affirmative argument as to why such an inference is improper. Instead, he simply argues that "[t]he government's anticipated arguments [as to why drug use necessarily entails drug possession] lack merit."

To be sure, in doing so, Ortiz tries to distinguish two of our cases that are adverse to his position -- United States v. Dow, 990 F.2d 22 (1st Cir. 1993), and United States v. Brennick, 337 F.3d 107 (1st Cir. 2003) -- on various grounds, including that the defendants in those cases had confessed to drug possession or, in one case, had actual notice of the alleged violation. He also

contends that the relevant discussions in those cases were dicta. But he does not explain why those distinctions make it reasonably likely that, notwithstanding those precedents, he would have succeeded in challenging an inference of possession based on the evidence of use in the form of positive drug tests, which he does not appear to challenge. Cf., e.g., Smith v. City of Boston, 460 F. Supp. 3d 51, 56-57 (D. Mass. 2020) ("[A] district court ordinarily gives great weight to the dicta of its court of appeals . . . ."). Although "an appellant need not prove that an argument would have necessarily been successful if raised [below], he must do more than claim that he could have done something differently and maybe that would have led to a different result." United States v. Harbour, 417 F. App'x 507, 514 n.4 (6th Cir. 2011) (unpublished).[8]

### D.

Ortiz also argues that, absent notice of the Grade B violation on which the District Court relied, his waiver of Rule 32.1 rights was invalid because it was not knowing and voluntary. He argues that his sentence must therefore be vacated under our opinion in United States v. Correa-Torres, where we

---

[8] Ortiz also argues that he could have "pursued other defensive strategies appropriate to criminal rather than technical violations." We reject this argument for similar reasons, as Ortiz's "mere assertions that he would have [done things] differently" is insufficient to show prejudice. See United States v. Medina, 73 F. App'x 464, 467 (1st Cir. 2003) (unpublished).

stated, "When a term of . . . supervised release is revoked following an invalid waiver of Rule 32.1 rights, the preferred practice is to vacate the ensuing sentence and start the proceeding afresh." 326 F.3d at 25. We are not persuaded.

In identifying that "preferred practice" in Correa-Torres, we relied on United States v. LeBlanc, in which the Seventh Circuit vacated and remanded in a case in which the district court revoked a term of supervised release after "accept[ing] the [releasee's] stipulation" to the alleged violation. LeBlanc, 175 F.3d 511, 514 (7th Cir. 1999); see Correa-Torres, 326 F.3d at 25. Similarly, in Correa-Torres, we noted that the district court "[r]el[ied] upon the [releasee's Rule 32.1] waiver" in revoking the releasee's term of supervised release. 326 F.3d at 21. We there explained that we saw "no reason to deviate from the norm" in LeBlanc and other cases, and we therefore vacated to allow the releasee an opportunity on remand to "withdraw his prior stipulation." Id. at 25.

Here, however, the District Court did not indicate that it relied on Ortiz's waiver, as opposed to making an independent finding based on the record before it, in concluding that Ortiz had committed a violation. At the hearing, the District Court stated: "[T]he Court finds that [Ortiz] has violated the

conditions of the supervised release term . . . ."[9] And it went on to detail the facts of Ortiz's positive urine tests, which it said "show[ed] that [Ortiz] is unable to comply with the law or the conditions of supervision imposed on him." As we have explained, Ortiz does not contend on appeal that that factual basis for the District Court's finding of violative conduct was erroneous, such as by arguing that he did not use illicit drugs or that the positive urine samples indicating marijuana and cocaine use were incorrect. And, as we have also explained, he also does not develop a legal argument as to why those facts, if true, would be insufficient to support the District Court's finding that Ortiz had violated the terms of his supervised release.

We therefore do not see any reason not to require Ortiz to show prejudice in this case. Cf. United States v. Díaz-Concepción, 860 F.3d 32, 38 (1st Cir. 2017) (stating, in

---

[9] We acknowledge that the District Court made that finding "[a]fter having heard . . . Ortiz's counsel, the [p]rosecutor, and . . . Ortiz having decided not to say anything." Ortiz does not contend, however, that the District Court rested its finding on Ortiz's waiver rather than on the evidence before it. We additionally acknowledge that the District Court stated that Ortiz violated his supervised release conditions specifically "by using controlled substances illegally[] and by not complying with the rules and regulations established as part of his outpatient and inpatient substance abuse treatment." Ortiz does not on that basis argue, however, that the District Court never found that he violated the condition prohibiting the commission of new crimes. Indeed, Ortiz appears to assume that the District Court implicitly made such a finding, as he states that the court "revok[ed] supervised release based on conduct not alleged in the revocation [motions]." We therefore proceed on that assumption as well.

- 24 -

applying plain error review to a challenge based on an assertedly invalid Rule 11 plea, that "an appellant's bare contention that he might have pled differently" is insufficient to show harm to his substantial rights, particularly where the evidence is otherwise "uncontested").

## III.

That brings us to Ortiz's final ground for challenging his revocation sentence, which is that, "[e]ven if adequate notice had been provided," the "[D]istrict [C]ourt did not conduct an adequate colloquy to ensure" that he "knowingly, intelligently, and voluntarily waived his rights under Rule 32.1." That is so, he explains, because the District Court "did not personally address [him] about the charges or his rights." He goes on to contend that, by analogy to the requirements under Federal Rule of Criminal Procedure 11 for taking a defendant's plea to a criminal charge, "where the record is silent on these matters, we cannot presume a knowing and voluntary waiver." (Citing Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).) He goes on to argue that his case is marked by deficiencies like those in Correa-Torres, in which we found a waiver of Rule 32.1 rights invalid on the ground that "nothing in the record adequately evinces that the [releasee] understood the nature of the accusation that triggered the revocation proceeding" and the record did not show "that the court

advised the [releasee] of his rights or that counsel reviewed those rights with him."  326 F.3d at 24-25.

Correa-Torres was clear, however, that the question of whether a waiver of Rule 32.1 rights is invalid is heavily fact dependent.  Id. at 23.  Indeed, we went so far as to suggest that each case is practically sui generis with respect to a waiver's validity.  See id.  And here, the record shows that Ortiz was granted an initial appearance in accord with Rule 32.1, that the Magistrate Judge presiding over that proceeding "advised [Ortiz] of his rights, including his right to a preliminary hearing," and that Ortiz "waive[d] his right to a preliminary hearing and submitted [an] official waiver form."  Yet Ortiz does not address this aspect of the record in lodging this challenge.  Nor does he develop an argument that he cannot be deemed to have knowledge of his rights unless he is informed of those rights by a district judge rather than a magistrate judge.  In this respect, Ortiz's blanket challenge to his revocation sentence based on the absence of a colloquy fails.

That said, Ortiz appears also to make a more limited challenge based on the colloquy being inadequate.  He argues that "any pre-hearing attorney-client discussions would have focused on the likely consequences of admitting to" violations of the conditions prohibiting drug use and requiring compliance with drug treatment rather than "the remote possibility that the court would

sua sponte transform drug-use allegations into felony possession charges." And, although he does not expressly make the point, that contention would appear to carry through to cast doubt on the colloquy between the Magistrate Judge and Ortiz, as the record shows that the Magistrate Judge specifically advised Ortiz of the supervised release violations "alleged in the [m]otion[s] filed by" Ortiz's probation officer, without any indication that Ortiz would have also been informed of a potential violation of the new-crimes condition.

Nonetheless, as we explained above, we do not understand Correa-Torres to require us to vacate a judgment revoking a term of supervised release in a case where we do "see . . . reason to deviate from" that "preferred practice." 326 F.3d at 25. And here, as we have explained, Ortiz does not argue that the District Court relied upon his waiver in finding that he violated the terms of his supervised release, and he also does not indicate specific evidence he would have submitted, witnesses he would have called, or legal arguments he would have made in challenging the basis for the District Court's finding. For these reasons, we hold Ortiz to his burden under the plain error standard to show harm to his "substantial rights," Rodríguez-Meléndez, 828 F.3d at 38 (quoting Roy, 506 F.3d at 30), which -- for reasons we have explained -- he has failed to do.

- 27 -

## IV.

For the foregoing reasons, we **affirm**.